*Petitioner's Exhibit B*

# STATE OF KANSAS
Tenth Judicial District

# OFFICE OF DISTRICT ATTORNEY

**PAUL J. MORRISON**
**DISTRICT ATTORNEY**

JOHNSON COUNTY COURTHOUSE
P.O. BOX 728, 6TH FLOOR TOWER
OLATHE, KANSAS 66061
913-782-5000, EXT 5333

*His administration in 2007 refused to file a petition against me, but the A.G. used my 2004 case against me at my "jury trial".*

## COMMENTS TO THE SENATE JUDICIARY COMMITTEE
### Re: Senate Bill No. 525

I welcome the opportunity to speak with you this morning about a piece of legislation you are considering, the Sexually Violent Predator Act, that will place the State of Kansas on the cutting edge in terms of dealing with offenders whose behavior has devastating and far-reaching effects. It is estimated that 1 in 3 girls and 1 in 10 boys will be sexually victimized by age 18, and that 1 in 4 woman will be sexually assaulted in their lifetime. According to the Governor's Task Force on Community Protection, the immediate monetary impact of responding to a single case of child sexual abuse is estimated to be about $183,00, including medical and psychological care for the victim, the investigative and court expenses and the cost of incarceration, supervision or rehabilitation of the offender (Prentky and Burgess, 1989). As illustrated, the serious cost of interpersonal violence is enormous. And those cost reflect cases in which victims survive.

When considering the passage of this bill, it may be helpful to look at the numbers of inmates this act would effect. As of August, 1993, the Kansas Department of Corrections had a

total inmate population of 6,259. Of that total, 1,091 of those inmates were serving controlling a minimum sentence for a sex offense. During fiscal year 1989, 138 sex offenders were released on parole or conditional release. One might extrapolate that in a three year period, there could be a total of approximately 450 inmates who would be released and considered under this act. Now, let's compare that number with the number reviewed in Washington since the inception of their Sexually Violent Predator Act. Since their law was enacted in July of 1990, approximately 2,000 inmates have been referred for screening. Of that total, 17 met the definition of a sexually violent predator and have been placed in a secure treatment facility, 6 are awaiting trial for determination as to their status as a predator, and 6 are currently undergoing evaluation. It is apparent when examining the numbers that Washington have reviewed and mandated treatment for that the numbers of persons who will be swept up in the net created by this law will be very small.

What kinds of offenders will, indeed, be caught up in this net? Although the numbers may be small, the damage done by these few individuals is tremendous. Consider Alvin Gaines, an offender that was convicted of kidnapping, raping, and sodomizing a 14 year old girl who was walking through her neighborhood late at night. A burglar by trade, Gaines was also an opportunist who is suspected of committing several

other sexual assaults in communities throughout Johnson County. Consider, too, Robert Philippi. Convicted twice in Missouri for kidnapping and sex crimes, he was recently sentenced in Johnson County for kidnapping and aggravated robbery, a set of circumstances in which he again preyed on a woman as his victim. Currently being prosecuted in my jurisdiction is another predator who, having been convicted of prior sex offenses against two other woman who he selected at random, has been charged with attempted rape, attempted aggravated criminal sodomy, and kidnapping. And finally consider Kenneth Hay. He is currently serving time in a Kansas State Correctional facility for luring small girls to his automobile and masturbating in front of them.

What do all of these offenders have in common? Without a doubt, it is safe to say that, although some of them have prior criminal history which can be verified, we have no way of knowing how many people each predator has victimized. In a study conducted by Gene Abel and staff at the New York State Psychiatric Institute's Sexual Behavior Clinic, they found that the number of sex offenses reported were significantly higher that the numbers reported to officials or in official statistics. In this study, the sample of 411 paraphiliacs ( a term which refers to sex offenders who have compulsive thoughts and urges to carry out sexually aggressive behaviors) attempted 238,711 sex crimes and completed 218,900 of them. This included nuisance and other

P-3

low-level types of sex offenses. On the average, each offender attempted 581 crimes. As an example, although we were able to identify 8 girls who were old enough to testify in the Hay case, how many other children may have been victimized and the act went unreported.

The offenders we are referring to are a small but highly dangerous population of sex offenders who will reoffend when released back out into the community. Just as an alcoholic is never "cured", but must continue to fight the battle of his/her addiction, so, too, is it for the sexually violent predator. Where, in our communities, can these persons be placed that they will not have access to woman and children? If you isolate these individuals in a treatment facility that will address their needs you are also addressing the needs of each of our communities, by ensuring that they will be safe from individuals who will victimize again. To wait until the offenses have stacked up against an individual to the point that they will be incarcerated until they are old is to allow the numbers of victims, the amount of destruction to stack up as well. That cost is simply too great.

Lynn Stemm
Victim Assistance Coordinator