Petitioner's Exhibit E

# TESTIMONY ON S.B. 525

# PRESENTED TO:

# 1994 HOUSE JUDICIARY COMMITTEE

## PRESENTED BY:

### GEORGE D. VEGA, COMMISSIONER
### SRS MENTAL HEALTH & RETARDATION SERVICES

## ON BEHALF OF:

## DONNA L. WHITEMAN, SECRETARY
## SOCIAL AND REHABILITATION SERVICES

---

**SRS Mission Statement**

"The Kansas Department of Social and Rehabilitation Services empowers individuals and families to achieve and sustain independence and to participate in the rights, responsibilities and benefits of fullcitizenship by creating conditions and opportunities for change, by advocating for human dignity and worth, and by providing care, safety and support in collaboration with others."

---

House Judiciary
Attachment 15
3-21-94

### Testimony on S.B. 525
### Presented to the Senate Judiciary Committee
### March 14, 1994

The Department of Social and Rehabilitation Services (SRS) opposes S.B. 525 in its present form. We strongly agree with the need to protect society from dangerous sexual predators.

SB 525 represents one step toward addressing a major society problem. The mental health system wants to do its part. We want to state up front mental health treatment may assist a very small number of sexual predators if sufficient resources are provided, but the numbers are extremely small in comparison to the number of people labeled a sexual predator or convicted of a sex-related crime. The mental health system also will resist doing anything which threatens services to the most vulnerable Kansas citizens we are currently serving.

Mental health treatment will not fix the problem. We strongly agree with the opening statements in the bill which advise sexual predators are extremely dangerous and:

- Do not have a mental disease or defect which would allow them to be treated by the current mental health system.

- Generally have antisocial personality features which are:
  - not treatable with today's mental health technology, and
  - make them likely to engage in sexually violent behavior.

- Are likely to repeat acts of violence.

- The treatment needs of this population are very long term.

Mental health professionals have told us:

- Keep this population separate from people with serious mental illness, either in general psychiatric hospital settings or in the state security hospital.

- Focus only on those who volunteer to participate; people who want to participate represent those most likely to respond to treatment.

- Control admissions through rigorous screening; keep the numbers within capacity for reasons related to treatment and security.

- If the process requires professionals to state a sexual predator is cured or not likely to repeat acts of violence before a person is discharged, the professionals will not make such statements which might place their reputations and licenses on the line. This means the patients may never be released.

Kansus v. Crane makes sure of this. Crane was Keri Applequist's pet and hes duing life in Missouri prison after reoffending. Austin Deslauries said, "I'll never let another one out."

1.5-2

- Successful treatment programs require long-term treatment, usually at least three to five years. The Washington program is four years old, too early to measure its success or failure.

**Safety of Those With Mental Illness**

The bill requires commitment to a secure facility but does not define or identify the facility. Even though State Security Hospital patients are prisoners or defendants, they are generally seriously mentally ill and thus are vulnerable. These individuals, therefore, would be subject to exploitation and harm from the predators.

**Hospital Vs. Security**

The Larned State Hospital has, for some time, been faced with accreditation difficulties with the Joint Commission on Accreditation of Hospital Organizations (JCAHO) because of the Security Hospital. Essentially, JCAHO has indicated the Security Hospital appears to be more of a prison than a hospital. Security is more of a priority than the therapeutic environment. As a result of this finding, the hospital has had to take steps to enhance the environment by such things as gradually unlocking bedroom doors at night.

This accreditation difficulty only would be heightened if the sexual predator program is housed in the Security Hospital because there is a substantial need for security with such a program.

It is noted the statute governing the sexual predator program in the state of Washington specifically states: "The facility shall not be located on the grounds of any state mental facility or regional habilitation center because these institutions are insufficiently secure for this population." Housing of the program at the Security Hospital becomes a paradox. If security needs are met, accreditation is threatened. If the therapeutic environment is addressed, security is threatened. It also is noted that the ward housing the sexual predator program cannot be excluded from the JCAHO process. There is no distinct part provision like there is with HCFA certification.

*Did they let John Cott out on Wednesday, June 30, 2021? That's what I saw and heard*

**Space, Education, Training**

According to research conducted by the chief psychologist at one of the state hospitals, one of the required characteristics of a successful program is adequate funding for staff, materials, staff training as well as having adequate space to implement the program. Currently, program space at the Security Hospital is less than adequate even for existing programs. Further, there are no staff at Larned State Hospital with the expertise to be involved with treatment activities of sexually violent predators. Larned experiences severe difficulty in recruiting appropriately-trained employees such as psychiatrists, psychologists, and other professionals. Training, educational materials, and equipment is estimated to be in excess of $60,000.

2

15-3

## Protection of Society

Clearly, the intent of this bill is to protect society from violent sexual predators. However, as I also understand, the intent is to limit the number of persons involved in the program to approximately the same number as those involved in the program in the state of Washington (20-30). If the number is limited, then protection of society is not achieved except for the limited number who are involved in the program. We note 331 individuals who meet the criteria of the bill were released in FY 1993 from the Department of Corrections.

Although Section 1 of the bill suggests legislative intent to very narrowly apply civil commitment procedures, there is no mechanism to limit the number or kind of individual who can be committed. As a result, there are likely to be a significant number of individuals who are committed who are not amenable to treatment and for whom treatment is not appropriate. Warehousing these individuals would be the result, and the treatment program would be ineffective.

Furthermore, if the commitment procedures are applied more liberally than the intent to narrowly apply them, the fiscal note will be substantial. As I mentioned earlier, there were 331 individuals released from the Department of Corrections in FY 1993 who met the criteria for commitment under the provisions of this bill. If 90 percent of the individuals were committed, the estimated cost for the first year would be approximately $8.6 million. Since treatment is long term with little guarantee of success, discharges would be few, and the cost would escalate as the number of commitments increase.

Participation in the Washington sexual predator program is voluntary. Implied in the voluntary criterion is the notion of cooperation on the part of the participant, and it can be assumed uncooperative individuals are excluded, and those individuals are likely to be more antisocial and more dangerous. Thus, it cannot be guaranteed that committing the more cooperative individuals will protect society from the most dangerous of sexual predators.

## Targeted Populations

Assuming responsibility for a new population increases the possibility of diverting resources from the established targeted populations of adults with severe and persistent mental illness and children/adolescents with serious emotional disturbances. We are concerned the needs of these most vulnerable of individuals will not be met.

## Civil Commitment

Civil commitment is not intended for individuals who choose, of their own will, to commit violent sexual crimes. Civil commitment is intended for those who are unable, because of a thought disorder, to make reasoned decisions about the reality and effects of their illness.

3

15-4

## Aftercare

Another essential characteristic of a successful, comprehensive treatment program for sexual predators is the adequate provision of aftercare. Presently, there is a paucity of community programs for this population.

## Recommendations

Like you, we want the safety of society protected, and we want to work with you to accomplish this goal. In this light, I urge you to consider a joint effort between the Department of Corrections and SRS to address this problem. This approach seems consistent with the initiative in the state of Washington. We would suggest language be added to the bill in Section 7 (a) to have the facility operated by the Department of Corrections with custody of the individual remaining with the Secretary of SRS. The Secretary of SRS would then contract with the Department of Corrections for the facility, perimeter security, meals, laundry and barber services, and medical and dental services. The Secretary could retain responsibility for the treatment program.

I also would recommend a section be added to allow for screening of individuals by a mental health professional when there is an intent to file a petition for commitment. Such a provision would allow the intent to narrowly apply commitment procedures to be maintained. Such screening could be conducted by program staff.

If the program is housed in the State Security Hospital or the Department of Corrections, we would recommend a separate funding stream and budget specifically for this program.

## Fiscal Note

One ward at State Security Hospital - estimated $434,745 first year assuming five commitments per year and ten evaluations. Annual cost to increase to $2,183,951 by FY 2000. However, a full staff would be necessary for the program even if only five individuals were admitted. Thus a beginning figure is estimated to be $1,400,000.
        Training, education, equipment - $65,000

With no mechanism to limit those committed using FY 1993 individuals who meet criteria of bill released from Department of Corrections - $8,601,899.

Program housed in Department of Corrections (using State of Washington data for FY 1994) - $2,688,904.

4