## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF KANSAS

FILED

AUG 14 2023

Clerk, U.S. District Court
By:_____ Deputy Clerk

KENNETH MARK HAY, )
                 Plaintiff, )
                            )
                            )
Versus                      )          Case No. 5:23-cv-03175-JWL
                            )
                            )
                            )
                            )
Ms. Keri Applequist         )
(Assistant Clinical Program Director), )
Ms. Lesia Dipeman           )
(Superintendent of LSH),    )
Ms. Haleigh Bennett         )
(Chief Operations Officer of LSH), )
Ms. Linda Kidd              )
(Program Leader of SPTP),   )
            Defendants et al., )

### *42 U.S.C. 1983* – Amended Complaint

**COMES NOW,** the Plaintiff, Mr. Kenneth Mark Hay, *Pro-Se*, before this Honorable Court and bring this civil action pursuant to *42 U.S.C. 1983* to address violations of his Due Process Rights, Ex Post Facto, Freedom of Speech Rights, Protection from Cruel and Unusual Punishment, Double Jeopardy, Unequal Protection of the Law, violations of his *1st, 4th, 5th, 6th and 14th Amendment Rights*. Plaintiff, Pro Se, reserves his right to amend this brief and to add parties as additional evidence is uncovered during the discovery process.

Plaintiff, Pro Se, brings forth this *42 U.S.C. 1983* brief to address past, current and potentially future violations of Plaintiff's and other similarly situated residents Statutory and Constitutional Rights.

## JURISDICTION

Jurisdiction is conveyed to this Honorable Court by *42 U.S.C. 1983, 28 U.S.C. 1915,* the Kansas Constitution Bill of Rights §, United States Constitution: Amendments: 1, 4, 5, 6, and 14.

## PARTIES

Plaintiff, Mr. Kenneth Mark Hay, is a resident of the State of Kansas, County of Pawnee and resides at Larned State Hospital, 1301 Kansas Highway 264 Larned, Kansas 67550. Plaintiff has been civilly committed to SPTP since 1995 from Johnson County, Kansas.

Defendant Ms. Lesia Dipeman, (LMSW) <u>Superintendent of LSH,</u> is a representative of KDADS, an entity of the State of Kansas, and is employed in Pawnee County at Larned State Hospital, Sexually Violent Predator Program at 1301 Kansas Highway 264 in Larned, Kansas 67550. Defendant Dipeman is responsible for promulgating and implementing policies and procedures within SPTP. Ms. Dipeman, acting under the color of State Law is being sued in her Individual and Official capacity, by and through her personal knowledge and participation in the issues brought forth to this court.

Defendant Ms. Haleigh Bennett, <u>Chief Operations Officer of SPTP,</u> is a representative of KDADS, an entity of the State of Kansas, and is employed in Pawnee County at Larned State Hospital, Sexually Violent Predator Program at 1301 Kansas Highway 264 in Larned, Kansas 67550. Defendant Bennett is responsible for promulgating and implementing policies and procedures within SPTP. Ms. Bennett, acting under the color of State Law is being sued in her Individual and Official capacity, by and through her personal knowledge and participation in the issues brought forth to this court.

Defendant Ms. Keri Applequist, (LCP) <u>Assistant Clinical Program Director of SPTP,</u> is a representative of KDADS, an entity of the State of Kansas, and is employed in Pawnee County at Larned State Hospital, Sexually Violent Predator Program at 1301 Kansas Highway 264 in Larned, Kansas 67550. Defendant Applequist is responsible for promulgating and implementing policies and procedures within SPTP. Ms. Applequist, acting under the color of State Law is being sued in her Individual and Official capacity, by and through her personal knowledge and participation in the issues brought forth to this court.

Defendant Ms. Linda Kidd, (PSE) <u>Program Leader of SPTP,</u> is a representative of KDADS, an entity of the State of Kansas, and is employed in Pawnee County at Larned State Hospital, Sexually Violent Predator Program at 1301 Kansas Highway 264 in Larned, Kansas 67550. Defendant Kidd is responsible for promulgating and implementing policies and procedures within SPTP. Ms. Kidd, acting under the color of State Law is being sued in her Individual and Official capacity, by and through her personal knowledge and participation in the issues brought forth to this court.

## COMPLAINT

The Defendants have violated several Federal Case Law Rights of the Plaintiff and have violated numerous Statutory and Constitutional Rights of the Plaintiff in their Individual and Official Capacity acting under the color of State Law.

The Plaintiff offers the following in support of this *42 U.S.C. 1983*:

## FACTS

1.   The Plaintiff has been incarcerated and confined in the Kansas Sexual Predator Treatment Program at Larned State Hospital since May 12, 1995.

2.   The Plaintiff was ordered to the custody, care, control and treatment of the Kansas Sexual Predator Treatment Program (henceforth known as SPTP) at the Larned State Hospital (henceforth known as LSH) by this Honorable Court.

3.   This Honorable Court has purview and jurisdiction of the Plaintiff and his confinement and incarceration in SPTP/LSH.

4.   The Plaintiff was the 4th entrant into SPTP and has "completed" the Program 4 times since his incarceration at SPTP.

5.   The Plaintiff has completed 10 Relapse Prevention Plans while in SPTP.

## NATURE OF THE CASE

1.   The Plaintiff states that SPTP violates several of his Constitutional Rights and has made *Kansas v. Hendricks,* 521 U.S. 346 moot and/or irrelevant, both in how it is constructed and how it operates.

2.   The Plaintiff states that SPTP violates *Foucha v. Louisiana,* 504 U.S. 71 by no longer being Civil Commitment, but Punitive in Intent, Nature and Action.

3.   The Plaintiff also states that the Kansas Sexually Violent Predator Act (KSVPA) is no longer a *"civil statutory scheme with a non-punitive effect."* The Plaintiff states that the KSVPA is Punitive.

4.   The Plaintiff also states that SPTP is not and never was intended to be Therapy, Treatment, Care and Rehabilitation. This makes SPTP and the KSVPA Cruel and Unusual Punishment, Ex Post Facto, Double Jeopardy, and Punitive in Nature and Action.

5.   The Plaintiff also states that SPTP does not have Due Process and this makes SPTP and the KSVPA Cruel and Unusual Punishment and Punitive.

6.   The United States Supreme Court and several Federal Courts have made numerous rulings since the SCOTUS ruling of *Kansas v. Hendricks,* 521 U.S. 346.

   a.   These rulings have "chipped away" the "precedential power" that *Hendricks* had. Now there are only 3 areas that still exist that make *Hendricks* relevant. Those are: Civil Statutory Scheme/Civil Commitment, Treatment/Therapy and Due Process in language only.

   b.   The Plaintiff will now prove that these 3 areas of *Hendricks* are now no longer valid because they no longer exist.

   c.   The Kansas Supreme Court ruled in *in re Care and Treatment of Hay* that they would (not) rule on that case until after the U. S. Supreme Court ruled on *Hendricks.* Had they not done this they would have ruled in favor of Hay and that is what the Plaintiff is doing now, rectifying a wrong that is (28) years old.

## **LEGISLATIVE INTENT**

1.  The Legislature in March 1994 had an oversight hearing on Senate Bill 525 on whether or not the Kansas Sexually Violent Predator Act would become law.

    a.  Numerous Law Enforcement Officials, Medical and Mental Health Officials, Law Professionals and Larned State Hospital Administrators testified before Honorable Jerry Moran's Judiciary Committee. This Committee acted more like a "witch hunt" than a discussion on how to give People the Care, Treatment, Therapy and Rehabilitation the Legislature stated in their Statutes.

    b.  Ms. Carla Stovall stated, *"a knot would always grow in my stomach. I knew the rapists or child molesters were being turned loose on an unsuspecting public to reoffend. I knew there was at least one woman or one child, but probably more, who were going to fall victim to this **animal.** It was as certain as the sun rising the next morning. And there was nothing I could do to prevent it. That was the sickening thing. We were condoning the future victimization – permitting it – allowing it. Because we couldn't stop it."* (Please see Plaintiff's Exhibit A).

    c.  Ms. Carla Stovall also stated, *"The situation in Kansas now is no better with sentencing guidelines than under indeterminate sentencing. The lesson is that under guidelines fewer child sexual abuse crimes will result in incarceration because of the high number which carry presumed probation. **This bill (Senate Bill 525) would allow us to stop the sure and certain victimization. It would allow us to keep the Sexually Violent Offenders Locked Up***

**INDEFINATELY. This is our OBLIGATION to provide for Public Safety in this way."** (Please see Plaintiff's Exhibit A).

d.  Mr. Paul Morrison stated, *"And finally consider Kenneth Hay. He is currently serving time in a Kansas State Correctional Facility for luring small girls to his automobile and masturbating in front of them."* (Please see Plaintiff's Exhibit B)**.**

    i.  Mr. Morrison was the prosecutor on the Plaintiff's criminal jury trial that sent the Plaintiff to prison for these sex offenses.

    ii.  Mr. Morrison was the prosecutor on the Plaintiff's original civil commitment trial.

e.  This is not Civil, but Punitive and it certainly is not Care, Treatment, Therapy and Rehabilitation.

2.  During the Plaintiff's civil commitment proceedings defense counsel (Ms. Nancy Orrick) asked this Honorable Court if this was a Civil Commitment Hearing or a Murder Trial in reference to Gene and Peggy Schmidt being present at the Plaintiff's hearing. Gene and Peggy were the parents of Ms. Stephanie Schmidt who was tragically kidnapped, raped and murdered by Mr. Donald Gideon in 1993. Gene and Peggy are from Johnson County, the Plaintiff's county of conviction and commitment.

a.  Ms. Orrick told the Plaintiff before the Jury Selection began in the Plaintiff's Civil Commitment Jury Trial, *"This stack of papers is your Appeal. You have already lost your Jury Trial."* Ms. Orrick became a Judge after she represented the Plaintiff.

b.  Mr. Morrison was terminated as Kansas Attorney General due to Sexual Harassment charges/accusations in his administration.

      i.   Mr. Morrison committed Malicious Prosecution against the Plaintiff in 1995. He also stated in the Plaintiff's civil commitment proceedings once that, *"You can't trust sex offenders."*

    ii.     This is not Civil, but Punitive and it certainly is not Care, Treatment, Therapy and Rehabilitation.

c.     Mr. Jim Blaufuss stated before the Kansas Judiciary Committee in March 1994, *"The most effective way to protect women and children from sex offenders is to send them to **prison** for the rest of their life. At this time a life sentence without parole is not possible. I do not believe anyone is willing to sacrifice a loved one in the hope that a sex offender should have another chance to start a new life. **There is no known TREATMENT that will change the Behavior of these Violent Felons."*** (Please see Plaintiff's Exhibit C).

d.     In 1992 the Kansas Legislature did not have the votes and/or the money to pass the Kansas Sexually Violent Predator Act. That is when Mr. Morrison began to "consider" Ken Hay, the Plaintiff.

      a.     However, tragically Donald Gideon demonstrated himself as the monster that he is and the State thought he was. (Even Ms. Stovall, who was on the Kansas Parole Board when Gideon was up for Parole, would pass him because she did not feel safe about his release and rightly so.)

      b.     Senator Vancrum stated in 1994, *"The bill is narrowly tailored to focus on the smaller number of habitual sex offenders who, because of their psychological makeup, pose an **immediate** danger to the public as **soon** as they are released from prison."*

          i.   This is why the Kansas Legislature was pursuing Donald Gideon. He is the type of offender the KSVPA was

Intended, Designed and Meant for, **not** Mr. Ken Hay or even Mr. Leroy Hendricks or the majority of the men presently in SPTP.

c. Once Gideon committed his atrocity the Kansas Legislature had their voters and tax payers in their pocket and could now write "blank checks" for the KSVPA. The Process for getting the Act passed as law began and on July 1, 1994 the Act took effect.

i. Note: the Plaintiff was scheduled to be the first person into the KSVPA, but his parole date landed after Mr. Leroy Hendricks' release date. But Mr. Morrison STILL considered the Plaintiff.

ii. The KSVPA and SPTP was Designed, Intended and Meant for a Sexual Offender like Donald Gideon and that is not who or what the Plaintiff is or has been. The Statutes of the KSVPA have even been so changed by the Kansas Legislature as to become a "catch all" for almost any and all sex offenders. This means that a person can be simply <u>charged</u> with a sexually violent offense and still be civilly committed as a sexually violent predator. This is even true if a person were to win a jury trial or be sentenced to a plea bargain.

3. The Superintendent of the Larned State Hospital testified in March 1994 to the Kansas Judiciary Committee that LSH did not have the staff, room, capacity, or qualifications to House, Care for, Treat, give Therapy, or Rehabilitate the persons committed under the Act. He also went further and stated that the Hospital was <u>losing money</u> and that SRS (now KDADS) was considering shutting down LSH.

a.   SPTP/KSVPA saved LSH and Larned, Kansas or they would be a "ghost town."

b.   Without the Plaintiff LSH would be vacant and possibly a museum.

c.   Ms. Donna Whiteman, Secretary of SRS in 1994 testified before the Kansas House Judiciary Committee on Senate Bill 525 the following on March 14, 1994: *"Currently, the State Security Hospital at Larned, Kansas has approximately 30 available beds. The first year of Mental Health Reform downsizing closed 30 adult beds, which allowed us to correct overcrowding on the Security Behavior Ward, but created no new available beds. The final two years of reform could make from 40 to 60 new beds available, assuming appropriate remodeling. Should the expected bed need created by S.B. 525 exceed 70 to 90 beds a new facility would be required."* (Please see Plaintiff's Exhibit D)

    i.   During the incarceration in SPTP of the Plaintiff he has seen the Program go from E1 (the Hole/Segregation in K.D.O.C. at Larned Mental Health Correctional Facility) which was ONLY 4 men to now being around 300 residents and spread amongst 6 buildings and 3 State Hospitals in 28 years.

    ii.   The Program has been rumored to be budgeted/slated for $30 million per fiscal year.

4.   That cost is for 331 residents and this was stated in 1994 by Ms. Whiteman. However, she also says that the total annual cost for SPTP should be or could be $9 million per fiscal year for 331 residents. **So where did $21 million per fiscal year go for the last 29 years?** For a grand total of $609, 000, 000 dollars total. ((Please see Plaintiff's Exhibit D).

5.   Multiple mental health and Medical professionals testified before the Kansas Judiciary Committee in March 1994 that SPTP/KSVPA was going to cause

serious problems due to the fact that there was not enough qualified staff to house, care for, treat, give therapy or rehabilitate to those committed under the Act.

a.   This is still true to this day.

    i.   Ms. Donna Whiteman, Secretary of SRS in 1994 testified before the Kansas House Judiciary Committee on Senate Bill 525 the following on March 14, 1994: *"If the process requires professionals to state a Sexual Predator is CURED or NOT likely to repeat acts of violence before a person is Discharged, the professionals will not make such statements which might place their reputations and licenses on the line. **This means the patients may never be released."*** ((Please see Plaintiff's Exhibit E).

b.   The "Therapists" are <u>Social Workers</u>. They are Licensed and Certified with the Kansas Behavioral Sciences Regulatory Board in Topeka, Kansas, but that Mr. David Fye, J.D., the Executive Director of the BSRB said in a letter to another resident, *"You asked for the requirements in the State of Kansas for Sex Offender and/or Sexual Predator Treatment/Therapy, Response: We do not have this information."* (Please see Plaintiff's Exhibit F).

c.   Mr. David Fye, J.D., the Executive Director of the BSRB said in a letter to another resident, *"You asked for the Standard for Sex Offender and/or Sexual Predator Treatment/Therapy in the State of Kansas and the United States. You asked whether the Sexual Predator Treatment Program at Larned State Hospital meets this and why. You asked whether Kansas Department of Corrections meets this and why? Response: We do not have information to answer your questions*

*and are unable to provide legal advice.*" (Please see Plaintiff's Exhibit F).

d.   The Activity Therapists may or may not be Licensed and Certified with the Kansas Behavioral Sciences Regulatory Board in Topeka, Kansas. However, they teach Psycho-Education classes that are used against the Plaintiff on whether or not he is progressing in Therapy/Treatment. This includes "classes" named Gym, Yard, Pottery, Gardening, and Social Recreation, and we must not forget the class "Survival and Knot Tying".

e.   This then violates *Howe v. Godinez,* 558 F. Supp. 3d 664 for not meeting the Mandatory Minimums for the National Sex Offender Treatment Association.

6.   Therefore, the Legislative Intent of the Kansas Sexually Violent Predator Act and the Kansas Sexual Predator Treatment Program was NEVER to be Therapy and Treatment. This makes the KSVPA and SPTP Unconstitutional and the Statute must be repealed.

a.   The KSVPA was and is not called the Kansas Sexually Violent Predator **Treatment** Act.

b.   The Sexual Predator Treatment Program is not and has never been called the Sexually **Violent** Predator Treatment Program.

c.   **In fact, "treatment" or "therapy" did not exist until *Hendricks* forced the State of Kansas to provide it. This proves that the Legislative intent of the Act and the "Program" was and is to be continued Punishment.**

   i.   Senator Vancrum stated, ***"If they never get out then so be it!"*** This statement was quoted in *Hendricks.*

ii.     How many people got elected, rich and famous off of the
        Plaintiff and the other men that have been placed in SPTP?

7.  The sole purpose of the KSVPA and SPTP has **NEVER** been Care,
    Treatment, Therapy, Rehabilitation and Release. This makes the KSVPA
    and SPTP no longer Civil, but Punitive in Nature and Action. Therefore the
    *Hendricks* ruling on the KSVPA and SPTP ruling, being Civil in nature, and
    is reversed and moot.

    a.  This also means that *Foucha's* ruling that the *Hendricks* Court used,
        to state that the KSVPA and SPTP must be Civil Commitment and not
        Punitive, Ex Post Facto, Double Jeopardy or Cruel and Unusual
        Punishment and is reversed and moot.

## CONFINEMENT/INCARCERATION

1.  The Plaintiff, Mr. Ken Hay, states that the Nature and Action of his
    Confinement and Incarceration in the Sexual Predator Treatment Program, at
    the Larned State Hospital is Unconstitutional, Shocking to the Conscience,
    Intolerable Conduct, and Egregious.

2.  Mr. Hay states that his Confinement and Incarceration in the Sexual Predator
    Treatment Program, at Larned State Hospital violates *Ohlinger v. Watson,*
    *Jones v. Blanas, and Youngberg v. Romeo* because his Confinement and
    Incarceration is lesser too and not equal to his Criminal Counterparts in the
    Kansas Department of Corrections.

3.  Mr. Hay states that his Confinement and Incarceration in the Sexual Predator
    Treatment Program and at Larned State Hospital violates his *14th*
    *Amendment Right* to Equal Protection of the Law because Mr. Hay's
    Confinement and Incarceration is not similar to, equal to or better than those

that are similarly situated as Civilly Committed persons in the State of Kansas.

4.  Mr. Hay's Confinement and Incarceration in SPTP/The Program and at LSH has been drastically changed, reduced, minimized and become increasingly more Punitive.

    a.  In the almost 3 decades in the Program and at LSH Mr. Hay has never been served with a Search Warrant before a Search/Shakedown has taken place of his residence or body. This violates his *4th Amendment Right.*

    b.  Mr. Hay has no Rights, but Privileges in SPTP because the Patient's "Bill of Rights" was changed and now *K.S.A. 59029a22* is at odds with the Due Process Protections of *Kansas v. Hendricks, Foucha v. Louisiana, Youngberg v. Romeo, Ohlinger v. Watson, Jones v. Blanas and the United States Constitution.*

    c.  Mr. Hay, unlike others that are Civilly Committed, has to pay for his Care and Treatment and even his family does to. (Please see *K.S.A. 59-29a04(f)).*

    d.  The "Therapeutic Environment" that used to be in the Program has systematically been removed by SPTP Leadership/Administration.

        i.  Mr. Hay used to enjoy going to Yard with his friends (fellow residents) and staff from 9 a.m. until 10:30 p.m. Now Yard is scheduled for maybe 2 hours per day. And Mr. Hay is "blessed" to have the opportunity and privilege, not Right, to go to Yard because of whatever reason SPTP/LSH gives for not having it. This is not the case in the KDOC.

ii.     Mr. Hay used to enjoy BBQ's with his friends (fellow residents) and staff 1-2 times monthly. This disappeared because of Beauracratic "Red Tape".

iii.    Mr. Hay used to enjoy having his fellow residents loved ones bring in food and other items during visitation and leave them with security. The items would then be given to the resident after security inspected them. This no longer takes place.

iv.     Mr. Hay used to enjoy softball, volleyball, football, etc. at the Yard, but is no longer allowed.

v.      Mr. Hay used to enjoy the SPTP band that was named "The Committed". They used to play at Yard and other events.

vi.     Mr. Hay didn't have to be escorted anywhere in the Program. He would simply tell Unit Staff he was going to Group or Class or another Unit to visit a fellow resident or to Yard or Gym. Now he must be accompanied everywhere by SPTP Staff and/or Security.

vii.    Mr. Hay used to enjoy going to the chow hall for meals. Now he is forced to eat his meals on the unit.

5.   Mr. Hay is subjected to a curfew with locked doors nightly. This is Cruel and Unusual Punishment.

6.   Mr. Hay is not in the "least restrictive setting" for his Care and Treatment. This is Cruel and Unusual Punishment.

7.   Mr. Hay cannot support himself financially by filing for SSI or Disability like other Civilians or others that are Civilly Committed and Similarly Situated. This is another *14th Amendment Rights* violation. This is Cruel and Unusual Punishment.

8.    Mr. Hay cannot support himself financially because he exercises his *1st Amendment Right* to not "work" or participate with the Program. Therefore he is ineligible for his Purple **privilege** level V.T.P. (Vocational Training Program) job. Even in prison Mr. Hay would make "Lay-In Pay". This is another *14th Amendment Rights* violation. This is Cruel and Unusual Punishment.

9.    Therefore Mr. Hay's confinement and incarceration is not Civil, but Punitive and violates *Hendricks* for not being a *"civil statutory scheme with a non-punitive effect"* and *Foucha* for not being Civil Commitment, but continued Punishment.


## TREATMENT/THERAPY/CARE

1.    Mr. Hay states that SPTP/the Program is not and has never been Care, Therapy, and Treatment.

2.    Mr. Hay completed this program in prison. This makes SPTP/the Program Ex Post Facto, Double Jeopardy and Cruel and Unusual Punishment.

3.    Mr. Hay has "completed" SPTP/the Program 4 times in his stay of almost 3 decades. Mr. Hay asks this Honorable Court how much more Care, Treatment and Therapy does he need?

4.    Mr. Hay states there is no Individualized Care, Therapy and Treatment in SPTP/the Program.

a.    SPTP/the Program uses "blanket policies" and "mass punishment" as a regular policy and practice.

b.     Mr. Hay goes to Process Group with Rapists and this is important because the Psychology and Treatment/Therapy of this crime/criminal/offender is different than Pedophiles, which Mr. Hay has as a diagnosis.

5.     The Resident Media Policy of SPTP/the Program listed in *SPTP Policy 5.18* includes, but is not limited to: books, movies, music, magazines, pamphlets, newspapers, etc. This policy was revised after a resident attempted to rape a female staff member that looked like his template of little boys.

a.     This atrocious act was caused because the Program took away the residents sexual outlet and the Program never gave him C.B.T. (Cognitive Behavioral Therapy).

b.     Because of this horrible tragedy Mr. Hay and all other residents are treated the same as him and Media is censored as such.

c.     Media used to not be censored as much. Mr. Hay could order media and if it was outside **today's** policy than he would receive a sticker on it and would have to turn it in when he advanced.

6.     Mr. Hay is not allowed to utilize any of the tools that the Program says they have given him because his TV channels are censored by the Program. So apparently Mr. Hay is left believing that the Program doesn't work and/or C.B.T. is a sham.

7.     *SPTP Policy 6.1* states that Mr. Hay is to receive 3 hours of Cognitive Behavioral Therapy per week.

a.     This violates the National Mandatory Minimum for Sex Offender Treatment that was upheld by the 8th Circuit Court of Appeals in *Howe v. Godinez,* 558 F. Supp. 3d 664.

b.     In *Hendricks* the Supreme Court acknowledged that residents were getting 31.5 hours of treatment per week.

8.  C.I.T.P.'s (Compartmentalized Integrated Treatment Plans) are conducted every 90 days. These last 5-10 minutes in length and Mr. Hay's Care, Treatment and Therapy is not discussed. This includes his Relapse Plan, his goals, detailed treatment plan, etc. This proves that SPTP is not Care, Therapy and Treatment.

9.  Mr. Hay states that the only resemblance of Care, Therapy and Treatment in SPTP/the Program are the R.S.A.'s (Rational Self-Analysis – Thinking Reports) and Journals.

a.  However, this is **self** administered Care, Therapy and Treatment. Since this is the case, SPTP is no longer the Treatment/Therapy "Program" that the *Hendricks* Court ruled on.

b.  Mr. Hay states some examples in his defense of argument that the Program is Self-Administered Treatment. SPTP is segregated into 3 Tiers and not the 7 Phases it used to be for so long. Tier 1 is Skill Acquisition. Tier 2 is Skill Demonstration. Tier 3 is Reintegration.

    i.  If Mr. Hay is wrong that SPTP is not and has never been Care, Therapy and Treatment than why has SPTP/The Program never done the following to help him Reintegrate into Society:

        a.  Learn how to operate a computer.

        b.  Learn how to operate a self-check out in a store.

        c.  Learn how to operate a cell phone.

        d.  Learn how to operate a pay at the pump.

        e.  How to have healthy and appropriate relationships.

        f.  V.T.P. has never taught Mr. Hay a career that he can have at Reintegration.

10. Justice Kennedy mentioned in *McKune v. Lile,* 536 U.S. 24, *"The recidivism rate of sex offenders is 'Frightening and High', as high as 80%."*

a. However, this fallacy was based on the erroneous belief that began by a therapist that took a quote from a 1986 Psychology Today magazine that stated, *"**Untreated** sex offender's recidivate as high as 80%."*

b. However, at Mr. Hay's Civil Commitment Jury Trial, Mr. Rick Kendall (Director of DCCCA Sex Offender Treatment Program) stated, *"Mr. Hay's recidivism rate is 20%, **if** he reoffends at all."*

c. Justice Kennedy **did** retract his statement about the recidivism rate for sex offenders.

d. As recently as 2019 the KDOC states that the recidivism rate for sex offenders is 3.5%.

11. Since SPTP/the Program is Punitive, and not Care, Treatment and Therapy that explains why so few residents and Mr. Hay are not being released. The *Hendricks* Court stated that when the Program became simply a warehouse (as it was from the beginning and is now) that they would strike it down as Unconstitutional.

## DUE PROCESS

1. The Kansas Sexually Violent Predator Act and the Kansas Sexual Predator Treatment Program no longer has Due Process and is now Unconstitutional.

2. Mr. Hay was in the Johnson County Jail for 35 days before being Civilly Committed as a Sexually Violent Predator.

a. Many residents in the Program sit in the county jail for up to 3-5 years before being Civilly Committed. This is a lack of Due Process and makes the Act Unconstitutional. This violates the Right to a Speedy and Fair Trial.

3. Mr. Hay is labeled Treatment Resistant because he no longer "works" or complies with the Program pursuant to *SPTP Policy 6.1.*

   a. However, the *Hendricks* Court and the KSVPA state that Mr. Hay's behavior justifies his confinement and incarceration in the Program.

   b. But Mr. Hay hasn't had any Sexually Violent, Sexually Deviant or Sexually Motivated or Sexual Acting out since **1991.**

   c. The DSM-V states that after 10 years of no symptoms of ANY Diagnosis, then that Diagnosis is now in FULL and COMPLETE Remission. This is true of Mr. Hay.

   d. SPTP will argue that Mr. Hay doesn't have access to children and therefore can't act out sexually.

   e. However, Mr. Hay's Diagnosis, **based on behavior,** is Exhibitionism (not exclusive to children). Therefore he has opportunity to display Volitional and Emotional Control (willful and deliberate) by not acting out.

   f. Because of Mr. Hay's lack of sexual behavior he no longer needs Care, Therapy or Treatment. Hence, his confinement and incarceration in the Program and LSH is Unconstitutional, violates his Due Process Rights, and is Cruel and Unusual Punishment.

4. Mr. Hay is <u>not</u> allowed to be present or participate in his Annual Review Hearing, but those that are similarly situated and his criminal counterparts are. This is a violation of Due Process of the *6th and 14th Amendments.*

5. Mr. Hay's Criminal History is always discussed at his Annual Interviews and in his Annual Reports. This is another Due Process Rights violation because his criminal history is *Res Judicata* and is not relevant to the **Annual** Review Hearing/Process as *Hendricks* and *K.S.A. 59-29a08(a)* state.

6. Mr. Hay is not allowed to see the SPTP Progress Panel pursuant to *SPTP Policy 6.2* because he doesn't "work" or participate in the Program. This violates his Due Process Rights because in prison an inmate is **guaranteed** to see the Kansas Prisoner Review Board. This is Cruel and Unusual Punishment and a *14th Amendment Rights* violation.

7. The SPTP Progress Review Panel does not offer an appeal process for Mr. Hay if they reject his advancement in the Program. This Cruel and Unusual Punishment and a *14th Amendment Rights* violation.

8. The Panel is seen by TEAMS (an internet system like Zoom or Skype). Mr. Hay doesn't know who is on the Panel or if they are all qualified to make informed Therapeutic "decisions" of his advancement/movement/status within the Program.

9. The Panel does not have to tell Mr. Hay who voted against him or why, unlike the Kansas Prisoner Review Board. This is another *14th Amendment Rights* violation and makes the Act and Program Unconstitutional and Punitive.

10. *SPTP Policy 7.1* is the Policy for Administrative Review and *SPTP Policy 7.2* is the Policy for the Resident Grievance Process. These Policies don't have Due Process because of:

   a. Mr. Hay is not given a Hearing to contest the Rights being Restricted for any reason or for a Grievance or for a Notification. He is not allowed to call witnesses, cross examine witnesses, provide evidence or file/gain discovery. These are Due Process violations of the *6th and 14th Amendments* and make the Act and the Program Punitive and Unconstitutional.

   b. There are no K.A.R.'s (Kansas Administrative Regulations) to govern the Program as in Prison.

c.  There are no I.M.P.P.'s (Internal Management Policies and Procedures) go govern the Program as in Prison.

d.  There are no Published or General Orders as in Prison.

e.  There is not Civil Commitment Litigation Reform Act like the Prison Litigation Reform Act.

f.  All of these are a *14th Amendment Rights* violation, is Cruel and Unusual Punishment, and violates *Ohlinger v. Watson, Jones v. Blanas, and Youngberg v. Romeo.*

11. Mr. Hay has never received any Journal Entry from this Honorable Court ordering his re-commitment to the Program pursuant to *Hendricks.* This is a Due Process violation and Cruel and Unusual Punishment.

12. Mr. Hay has never received an In-Camera Annual Review Hearing yearly after he nor his attorney did not file the Petition for Release within 45 days. This is a Due Process violation and Cruel and Unusual Punishment.

13. The Annual Interviews are done via TEAMS and this violates *K.S.A. 60-235.* This is a Due Process violation and Cruel and Unusual Punishment.

14. The burden of proof is on the State during pre-commitment, but shifts to Mr. Hay on post-commitment. This is a *14th Amendment Rights* violation and Cruel and Unusual Punishment.

15. In 2017 The Kansas Legislature reversed *Hendricks* by changing the statutes of the KSVPA by removing the Right for Mr. Hay to Petition for Immediate Release and to Petition at anytime. This is a Due Process violation.

16. With the inception of the SPTP Progress Review Panel into the KSVPA (*K.S.A. 59-29a02(m))* the Annual Reports are moot and this reverses *Hendricks.* This makes The Act and The Program Unconstitutional and Punitive.

17. This Honorable Court does not have the Power or Authority to place Mr. Hay into Tier 2 or Tier 3. This is a Due Process violation and makes the Act and the Program Unconstitutional and Punitive.

18. The Annual Review Hearings of *K.S.A. 59-29a08* are Ex Post Facto, Double Jeopardy, Punitive and Unconstitutional because they re-try Mr. Hay using the same 4 criteria that the State used to have him originally civilly committed.

## **CONCLUSION**

THEREFORE, Your Honor, the Plaintiff, states that the Kansas Sexually Violent Predator Act and the Kansas Sexually Violent Predator Program is Unconstitutional by being Punitive, no longer being Civil Commitment in Intent, Nature, Statutory Scheme or Action, by being Ex Post Facto, by being Double Jeopardy, by being Unequal Protection of the Law, no longer being Treatment, by having no Due Process, by being Shocking to the Conscience, by being Egregious, by being Intolerable Conduct and violating his Constitutional Rights of the *1st, 4th, 5th, 6th, and 14th Amendments.*

## **PRAYER FOR RELIEF**

1. A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States. And to a declaration that the KSVPA and SPTP are Unconstitutional and Punitive.

2. A preliminary and permanent injunction ordering Defendants, Ms. Applequist, Ms. Dipeman, Ms. Bennett, and Ms. Kidd, to cease violating the Plaintiff's Constitutional and Statutory Rights as stated by the Plaintiff in this action.

3.  Compensatory damages in the amount of $50.75 million dollars against each defendant, jointly and separately.

4.  Punitive damages in the amount of $50.75 million dollars against each Defendant.

5.  To have all Bank Accounts, Credit Card Accounts, Stocks, Bonds, 401 K's, I.R.A.'s, Retirement Funds, and Any and All Assets of the Defendants Frozen and Seized and turned over to the possession of the Plaintiff.

6.  To have the Defendants be prevented from working in the Medical, Mental Health, and Correctional Environment/Field in the United States for good.

7.  To have the Defendants personally apologize to every resident in SPTP in person for 30 years of Suffering and Humiliation.

8.  To have the Plaintiff deported to Scotland or Ireland.

9.  A jury trial on all issues triable by jury.

10. Plaintiff's costs in this suit.

11. Any and All other relief this Honorable Court deems necessary.

12. The Plaintiff to be Immediately Released from the Custody of SPTP/LSH and of KDADS within 10 Business Days from the Order of this Honorable Court on this *42 U.S.C. 1983*.

13. To rule that SPTP/KSVPA is found to be Unconstitutional for the grounds that the Plaintiff stated in this *42 U.S.C. 1983*.

## VERIFICATION AFFIDAVIT

UNITED STATES DISTRICT COURT    )
                                       )

DISTRICT OF KANSAS              )

        I, Kenneth Hay, by and through himself, *Pro Se*. That I am of lawful age, that I am the Petitioner in the above-entitled action, that I have read said Petitioner's Pro-Se *42 U.S.C. 1983*, that I know the contents of said Motion, and that the facts herein are true and correct to the best of my present ability.

Respectfully Submitted,

Kenneth Hay, *Pro Se.*

## DECLARATION UNDER PENALTY OF PURJURY

        The undersigned declares (or certifies, or verifies, or states) under penalty of perjury that he is the Affiant in the above action, that he has read the above Petitioner's Pro-Se *42 U.S.C. 1983*, that that the contents of said Motion, and that the facts herein are true and correct to the best of my present ability. {Per 28 U.S.C. § 1764. 18 U.S.C. § 1621. K.S.A. 53-601.}

**Executed at:**  1301 Kansas Highway 264, Larned Kansas, 67550, **ON**   9  day of *August* , 2023.

Respectfully Submitted,

Kenneth Hay, *Pro Se.*

## CERTIFICATE OF SERVICE

        Petitioner, Kenneth Hay, by and through himself, *Pro Se*. hereby certifies that on this   9  day of *August* , 2023, and in accordance with facility mail Policy, Right-103, I did place the Petitioner's Pro-Se *42 U.S.C. 1983*, into the facility mail system.

The Motion and proper copies were correctly addressed to the following:

United States District Court
C/O Clerk of the District Court
444 S.E. Quincy, Room 490
Topeka, Kansas 66683

Kansas Attorney General's Office
C/O Mr. David Davies
120 S.W. 10th Street, 2nd Floor
Topeka, Kansas 66612

Kansas Department for Aging and Disability Services
C/O Mr. Jared T. Langford
503 South Kansas Avenue
Topeka, Kansas 66612

Ms. Keri Applequist
1301 Kansas Highway 264
Larned, Kansas 67550

Ms. Lesia Dipeman
1301 Kansas Highway 264
Larned, Kansas 67550

Ms. Haleigh Bennett
1301 Kansas Highway 264
Larned, Kansas 67550

Ms. Linda Kidd
1301 Kansas Highway 264
Larned, Kansas 67550

LEANN L THOMAS
My Appointment Expires
April 21, 2024

Notary Seal

_____
Notary Signature

Respectfully Submitted
Mr. Kenneth Mark Hay
1301 Kansas Highway 264
Larned, Kansas 67550
620-285-4777 extension 7