**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

KENNETH MARK HAY,                )
                                 )
          Plaintiff,             )
                                 )
v.                               )          Case No. 23-3175-HLT-GEB
                                 )
KERI APPLEQUIST, *et al.*,       )
                                 )
          Defendants.            )
_____)

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants Keri Applequist, Lindsey Dinkel, Haleigh Bennett, and Linda Kidd

("Defendants") respectfully request, through Assistant Attorney General Matthew L. Shoger, that

this Court dismiss the claims against them under Fed. R. Civ. P. 12(c). Defendants also move in

the alternative to strike Plaintiff's jury-trial demand. Defendants attach three new exhibits,

outlined in the table below, and state the following in support.

### INDEX OF EXHIBITS[1]

| Exhibit | Description |
|---------|-------------|
| A | Declaration of Dr. Christine Mohr |
| B | Declaration of Keri Applequist |
| C | Selected court records from Johnson County case no. 95-CV-2097 |

### NATURE OF THE CASE

Plaintiff Kenneth Mark Hay, a resident currently civilly committed to the Sexual Predator

Treatment Program (SPTP) at Larned State Hospital (LSH), alleges that his continued civil

commitment in the SPTP program violates various constitutional rights.

---

[1] Defendants only include Exhibits A and B to support a factual attack on subject-matter jurisdiction, which is made as an alternative argument and only relies on certain portions of those exhibits. And the Court can take judicial notice of Exhibit C as court records from a related case.

Hay filed this suit on July 20, 2023, (Doc. 1), and his Amended Complaint ("Complaint") on August 14, 2023 (Doc. 8). On September 19, 2024, the Court dismissed "Plaintiff's claims arising out of his original civil-commitment proceeding, his First Amendment claim, and his individual-capacity claims against Defendants" as well as all claims against defendant Dipman. (Doc. 34 at 10.) Only official-capacity claims against Defendants remain under § 1983 for alleged violations of Hay's Fourth, Fifth, Sixth, and Fourteenth Amendment rights, for alleged "Cruel and Unusual Punishment" (under the Eighth Amendment), and for alleged violations of the "Ex Post Facto" prohibition. (Doc. 8 at 1-2.) Hay also asserts that this action is brought under the Kansas Constitution and that K.S.A. 60-235 was violated. (Doc. 8 at 2, 22.) Hay seeks compensatory and punitive damages and declaratory and injunctive relief. (Doc. 8 at 23-24.) Defendants filed an Answer on November 6, 2024 (Doc. 38), and an Amended Answer on November 20, 2024 (Doc. 40). Defendants now file their Motion for Judgment on the Pleadings.

Hay's own allegations and the undisputed evidence show he was not participating in treatment at the time of the Complaint and was therefore considered "Treatment Resistant." (Doc. 8 at 16, 20-21; Exhibit A at ¶¶ 35-38; Exhibit B at ¶¶ 17, 35, pgs. 17-23.)

The Court should dismiss all remaining claims for lack of subject-matter jurisdiction due to Eleventh-Amendment immunity, lack of constitutional standing, and the *Rooker-Feldman* doctrine. Alternatively, the Court should dismiss the claims for failure to state a claim due to the *Heck v. Humphrey* bar, search warrants not being required in the civil-commitment context, Hay's civil commitment not being punitive, lack of a due-process violation, and Hay not being similarly situated to groups he compares himself with. Lastly, the Court should strike the demand for a jury trial if only claims for equitable relief remain.

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion for Judgment on the Pleadings*

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) for lack of subject-matter jurisdiction and failure to state a claim is subject to the same standards as a motion to dismiss under Rule 12(b)(1) and 12(b)(6). 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed., June 2024 update); *see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1101-02 (10th Cir. 2017).

### *Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. Hay, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

### *Standard on Motion to Dismiss for Failure to State a Claim*

On a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although courts have traditionally construed *pro se* pleadings in a liberal fashion, *pro se* plaintiffs must still allege sufficient facts "on which a recognized legal claim could be based," *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996), construct their own arguments, *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), and follow the same rules of civil procedure as other litigants. *Id.*

I.    **The Eleventh Amendment bars Hay's state-law claims in their entirety and his § 1983 claims for monetary damages.**

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). State officials share the state's immunity from suits against them in their official capacities. *See id.*; *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212. A narrow exception, the *Ex Parte Young* exception, allows a plaintiff to seek prospective relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)); *see also Ex Parte Young*, 209 U.S. 123 (1908). But Eleventh-Amendment immunity still bars claims based on ongoing violations of *state* law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). And a plaintiff must have constitutional standing to invoke the exception. *Johnston v. Prairie View, Inc.*, No. 19-2041-HLT, 2020 WL 1984287, at *3 (D. Kan. Apr. 27, 2020); *see also James v. Hegar*, 86 F.4th 1076, 1078 (5th Cir. 2023).

Here, only official-capacity claims remain. (Doc. 34 at 10.) Hay requests prospective relief (Doc. 8 at 23-24), which is exempt from Eleventh-Amendment immunity with regard to alleged violations of *federal* law. But Hay also appears to request relief for alleged violations of *state* law (*see* Doc. 8 at 2, 22), which is barred. And Hay requests monetary relief in the form of compensatory and punitive damages (Doc. 8 at 24 (prayers for relief ¶¶ 3-4)), which is barred. So Hay's state-law claims and his claims against Defendants for monetary damages should be dismissed for lack of subject-matter jurisdiction due to Eleventh-Amendment immunity.

Further, for reasons argued in the following section, Hay lacks constitutional standing for

most of his claims for relief, so he cannot invoke the *Ex Parte Young* exception for those claims.

II. **Hay fails to establish constitutional standing for most of his claims for relief due to lack of an actual injury, lack of causation, and lack of redressability.**

To establish federal subject-matter jurisdiction, plaintiffs must show they have standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The "irreducible constitutional minimum of standing" contains a triad of requirements: injury in fact, causation, and redressability. *Id.* at 102-03. This triad "constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 103-04. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "[S]tanding is evaluated as of the time a case is filed." *Rio Grande Foundation v. Oliver*, 57 F.4th 1147, 1161 (10th Cir. 2023) (citing *Friends of the Earth*, 528 U.S. at 180).

A. **Hay fails to establish an injury in fact to support prospective relief based on inadequate treatment because he was not participating in treatment at the time of the Complaint.**

"When prospective relief . . . is sought, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1306 n.3 (10th Cir. 1998). In order to suffer an actual and continuing injury under a policy and have a live controversy regarding that policy, a plaintiff must submit himself to the challenged policy. *Burnett v. Okla. Dep't of Corr.*, 737 F. App'x 368, 374-75 (10th Cir. 2018); *see also Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997) (cited approvingly by *United States v. Hardman*, 297 F.3d 1116, 1121 (10th Cir. 2002)).

Here, although Hay complains about the allegedly inadequate treatment provided by SPTP (Doc. 8 at 16-19), he admits in the Complaint that he was not participating in treatment at

the time the complaint was filed. (Doc. 8 at 16, 20-21.)[2] Therefore, he lacks standing to object to the treatment policies of SPTP because he was not subjecting himself to those policies at the time the Complaint was filed. In additional pleadings Hay has filed that were not authorized by this Court (*see* Fed. R. Civ. P. 7(a)(7)) – and which therefore should not be considered part of the pleadings – Hay alleges that he is no longer Treatment Resistant and is participating in treatment. (Doc. 41 at 6-7; Doc. 42 at 7-8.) But even if true, standing is evaluated at the time of the filing of the Complaint, and at that critical time he lacked standing.

### B. Hay lacks standing to assert claims for relief on behalf of other persons because their alleged injuries are not his own.

Outside of a class action, a plaintiff must assert injuries to his own constitutional rights and lacks standing to raise claims on behalf of others. *See Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986) (citing *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)). Here, Plaintiff did not seek to have this case certified as a class action, and it has not been. (*See* Docket; Doc. 8.) Yet in the Complaint, Hay alleges harm to others. (Doc. 8 at 2 (addressing "other similarly situated residents Statutory and Constitutional Rights"), 19 ("Many residents in the Program sit in the county jail for up to 3-5 years before being Civilly Committed.").) And in his relief requested, he requests relief on behalf of other inmates. (Doc. 8 at 23-24 (requesting in ¶¶ 1 and 13 that the KSVPA and SPTP be declared unconstitutional, not just as applied to him, but for all residents, and requesting in ¶ 7 that Defendants be ordered to "personally apologize to every resident in SPTP").) But Plaintiff lacks standing to raise claims on behalf of other inmates.

---

[2] Alternatively, Defendants make a factual attack on subject-matter jurisdiction and present evidence to challenge the Court's jurisdiction. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010); *Williams v. United States*, 780 F. App'x 657, 660 (10th Cir. 2019). The record supports that, at the time the Complaint was filed, Hay was labeled "Treatment Resistant" and did not participate in treatment. (Exhibit A at ¶¶ 35-38; Exhibit B at ¶¶ 17, 35, pgs. 17-23.)

**C.  Hay fails to establish causation to support prospective relief based on his alleged lack of in-camera review hearings or lack of receiving journal entries.**

For the second prong, causation, "there must be . . . a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co.*, 523 U.S. at 103. Here, Plaintiff complains that he was not granted an in-camera review hearing by a state court.[3] (Doc. 8 at 22.) He also complains that he has not received journal entries from "this Honorable Court." (Doc. 8 at 22.) No judges are defendants in this case,[4] and Hay has not alleged any facts to make it plausible that Defendants caused any failure by either court to provide any hearings or journal entries. So Hay lacks standing to bring any claims against Defendants for lack of an in-camera review hearing or journal entries because he has not plausibly alleged causation by Defendants.

**D.  Hay fails to establish redressability to support claims for prospective relief in the bizarre forms of asset seizure, blacklisting, personal apologies, and deportation.**

To establish redressability, the relief sought must serve to either reimburse the plaintiff for losses or to eliminate lingering effects of losses. *See Steel Co.*, 523 U.S. at 105-06. "Relief that does not remedy the injury suffered" does not count. *Id.* at 107. And "[t]the scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (quoted approvingly by *Lewis v. Casey*, 518 U.S. 343, 359-60 (1996)).

Here, some of Hay's requested remedies are patently frivolous, have nothing to do with the case, and are beyond the Court's authority. Plaintiff requests the same relief in prayers for relief 5 and 6 (Doc. 8 at 24) of the Complaint (asset seizure and blacklisting) that the Court categorically rejected in response to his request for a preliminary injunction. (Doc. 15 at 1-2.)

---

[3] He admits that he and his attorney did not file a timely Petition for a hearing. (Doc. 8 at 22.)
[4] If they were, absolute judicial immunity would apply. *Ysais v. New Mexico*, 373 F. App'x 863, 866 (10th Cir. 2010).

The same reasons apply for rejecting these requests at this stage as well. In prayer for relief 7, Plaintiff requests the Court order the Defendants to "personally apologize to every resident in SPTP." But requests for court-ordered apologies are "patently frivolous." *Weidman v. Thomas*, No. 92-1365, 1993 WL 186163, at *2 n.1 (D. Kan. May 10, 1993); *see also Woodruff v. Ohman*, 29 F. App'x 337, 346 (6th Cir. 2002) (citing *McKee v. Turner*, 491 F.2d 1106, 1107 (9th Cir. 1974)). In prayer for relief 8, Plaintiff requests to be deported to Scotland or Ireland. But Plaintiff has not provided any legal basis for such outlandish relief. Because the Court cannot grant these forms of relief, Hay lacks standing to request them due to lack of redressability.

### E.  Conclusion regarding Standing

Therefore, Hay lacks standing for claims for prospective relief based on inadequate treatment, based on injuries to others, and based on a lack of in-camera review hearings or lack of receiving journal entries. He also lacks standing for claims for asset seizure, blacklisting, personal apologies, and deportation. As discussed above, because Hay does not have standing for these claims, he cannot invoke the *Ex Parte Young* exception regarding them, so these claims are also barred by Eleventh Amendment immunity. Accordingly, these claims should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity and lack of constitutional standing.

### III.   The *Rooker-Feldman* doctrine bars this Court from exercising subject-matter jurisdiction over Hay's claims that he is wrongfully committed.

The *Rooker-Feldman* doctrine, based on 28 U.S.C. § 1257, prevents federal courts other than the U.S. Supreme Court "from exercising jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 514 (10th Cir. 2023) (quoting *Exxon Mobil*

*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

> *Rooker-Feldman*'s jurisdictional bar applies when (1) the plaintiff lost in state
> court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court
> rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff
> is asking the district court to review and reject the state court judgment.

*Id. Rooker-Feldman* bars lower federal courts from exercising subject-matter jurisdiction over

each applicable claim. *Id.* at 514-15 (citing *Lance v. Dennis*, 546 U.S. 459, 464 (2006)).

For the third element to apply, the state-court judgment must have been final before the

plaintiff filed the federal claim. *Erlandson v. Northglenn Mun. Ct.*, 528 F.3d 785, 788 n.3 (10th

Cir. 2008). This includes when "the losing party allows the time for appeal to expire."

*Federación de Maestros de P.R. v. Junta de Relaciones Del Trabajo de P.R.*, 410 F.3d 17, 24

(1st Cir. 2005) (citing approvingly by *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.*, 705 F.3d

1223, 1232 n.12 (10th Cir. 2013)). For the fourth element to apply, "an element of the claim

must be that the state court wrongfully entered its judgment." *Graff*, 65 F.4th at 515.

Here, the Court can take judicial notice of court records from the underlying state case.

*Gee v. Pacheco*, 627 F.3d 1178, 1186, 1191 (10th Cir. 2010). Hay was committed as a sexually

violent predator in April 1995 following a jury verdict. (Exhibit C at 11.) The state court then

periodically ordered that Hay should remain civilly committed. (Exhibit C at 20-21 (showing

orders in July 1999, July 2000, November 2002, January 2004, and December 2004), 35-48

(containing orders from 2006 to 2019), 105-06 (containing a May 2021 order).) The earliest

order so holding was in July 1999. (Exhibit C at 20.) The latest order so holding was May 11th,

2021. (Exhibit C at 29, 105-06.) Hay's time to appeal that order expired thirty days later on June

10th, 2021, *see* K.S.A. 60-2103(a), making it a final state-court judgment for purposes of

*Rooker-Feldman* over two years before this federal case was filed on July 20, 2023 (Doc. 1).

(The time to appeal each earlier order had also expired.) In that latest order, the Court found:

> that Kenneth Mark Hay should continue to be considered to be a sexually violent predator, and should continue to be committed to the custody of the Secretary of the Kansas Department for Aging and Disability Services until his transfer to conditional release or his release from treatment as this court may further order.

(Exhibit C at 105-06 (emphasis omitted).) After Hay challenged the Court's similar finding in 2009, the Court conducted a hearing, in which Hay participated, and the Court found that:

> there is not probable cause to believe that Respondent's mental abnormality or personality disorder has so changed that the Respondent is safe to be placed in transitional release or discharged.

(Exhibit C at 37-38.) And the Court ordered "that the respondent remain in secure commitment under the Sexual Predator Act." (Exhibit C at 38.)

These orders by the state court were appealable to the Kansas Court of Appeals under K.S.A. 60-2102(a)(4). And even if they were not, that would have rendered the state district court "the highest court of a State in which a decision could be had," allowing an appeal to the U.S. Supreme Court under 28 U.S.C. § 1257. Accordingly, the *Rooker-Feldman* doctrine applies even to "cases . . . deemed unappealable by the state appellate court." *Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d 1154, 1158 (8th Cir. 2007). Despite this, Hay did not appeal any of the continuation-of-commitment orders. (*See* Exhibit C at 20-34.)

Hay is effectively requesting to appeal these continuation-of-commitment orders to this Court. Each element of *Rooker-Feldman* applies. Hay lost in state court. His remaining claims in this case assert he has been injured by the state court's continuation-of-commitment orders, which ordered he remain civilly committed in SPTP. The state-court judgments were final before Hay filed this case because the time to appeal had expired. And Hay asks the Court to review and reject these judgments as unconstitutional. (*See, e.g.,* Doc. 8 at 23 ("The Annual Review Hearings . . . are . . . Unconstitutional"), 24 ("The Plaintiff to be Immediately Released from the Custody of SPTP/LSH").) So *Rooker-Feldman* bars the Court from exercising jurisdiction in this

10

case, and Hay's claims should be dismissed for lack of subject-matter jurisdiction.

## IV.  *Heck v. Humphrey* bars this Court from considering Hay's claims that he is wrongfully committed.

An implied exception to § 1983's coverage exists where the claim seeks "core" habeas corpus relief. *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). As part of this exception, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). The *Heck* bar has since been clarified to also bar claims for equitable and declaratory relief, *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 520 n.26 (10th Cir. 2023) (citing *Wilkinson*, 544 U.S. at 80-81), and to apply to claims alleging unlawful civil confinement as a sexually violent predator. *Cohen v. Clemens*, 321 F. App'x 739, 742 (10th Cir. 2009) (citing *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1137 (9th Cir. 2005)). So Hay's remaining claims, alleging that he is wrongfully civilly committed, are barred under *Heck* and should be dismissed for failure to state a claim. *See Johnson v. Spencer*, 950 F.3d 680, 697 (10th Cir. 2020).

## V.  Hay's Fourth Amendment rights have not been violated because search warrants are not required for searches and shakedowns in a civil commitment setting.

Hay claims that "[i]n the almost 3 decades in the Program and at LSH Mr. Hay has never been served with a Search Warrant before a Search/Shakedown has taken place of his residence or body. This violates his *4th Amendment Right.*" (Doc. 8 at 14 (emphasis in original).) He also complains that he must be escorted around LSH, that has a curfew, and that his door is locked at night. (Doc. 8 at 15.) Like in the *Baker v. Keck* and *Whitehead v. Marcantel* cases, none of these allegations state a valid claim for relief. *Baker v. Keck*, No. 14-1356-JTM, 2017 WL 3026143, at *2, *5 to *6 (D. Kan. July 17, 2017); *Whitehead v. Marcantel*, 766 F. App'x 691, 700 (10th Cir. 2019) (citing *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328

(2012)). As in those cases, a warrant is not generally required in the civil-commitment or corrections context before a search of a person or room, and Hay has not alleged any specific facts to make it plausible that any search was unreasonable under the circumstances. He has not alleged any circumstances at all. Therefore, Hay's Fourth Amendment claims should be dismissed for failure to state a claim.

**VI.    Hay's continued commitment under the KSVPA is not punitive because of the same considerations as in *Kansas v. Hendricks*.**

When the U.S. Supreme Court determined in *Kansas v. Hendricks*, 521 U.S. 346 (1997), that civil commitment under the KSPVA is not punitive, it based its finding on the following eleven considerations: (1) Kansas placed the KSVPA in the probate code rather than the criminal code, *id.* at 361, 368 ("disavowed any punitive intent"); (2) the language of the act describes a "civil commitment" process, *id.* at 361 (quoting K.S.A. 59-29a01), 368; (3) "commitment under the Act does not implicate either of the two primary objectives of criminal punishment: retribution or deterrence," *id.* at 361-63, 368; (4) the confinement of "mentally unstable individuals who present a danger to the public" is a "classic example of nonpunitive detention," *id.* at 363; (5) confinement under the KSVPA is limited to a small subclass of particularly dangerous individuals – that is, sexually violent predators who pose a danger to the public health and safety – *id.* at 357, 368; (6) "periodic" reviews check that the grounds for confinement continue to exist, with the same burden of proof set on the state as for initial confinement, *id.* at 363-64 (quoting *Jones v. United States*, 463 U.S. 354, 368 (1983)), 368-69; (7) Kansas choosing to provide additional safeguards beyond those required by the U.S. Constitution does not render the proceedings criminal, *id.* at 364-65, 368; (8) treatment is not required when no adequate treatment is available, *id.* at 365-66; (9) the KSVPA has treatment as at least an "ancillary" goal even if "no treatment was being provided" as it recommended treatment "if such is possible," *id.*

at 366-68; (10) SPTP residents are housed separately from inmates and overseen by staff separate from the department of corrections, *id.* at 368; and (11) treatment occurs, *id.* at 368.

Only one of these eleven considerations has allegedly changed, and Hay does not have standing to raise any claims based on the one alleged change. The KSVPA remains in the probate code and it still refers to "civil commitment." *See* K.S.A. 59-29a01 *et seq.* Civil commitment under the KSVPA is not retributive because: (A) it does not seek "to punish past misdeeds" but to "protect the public from harm"; (B) it does not require a criminal conviction; and (C) no finding of scienter is required. *See Hendricks*, 521 U.S. at 361-62. Civil commitment under the KSVPA is not intended as a deterrent because sexually violent predators are "unlikely to be deterred by the threat of confinement." *See id.* at 362-63. The confinement of "mentally unstable individuals who present a danger to the public" remains a classic example of nonpunitive detention. *See id.* at 363. Confinement under the KSVPA is still limited to sexually violent predators who pose a danger to public health and safety. *See id.* at 357, 368.

Periodic reviews still check that the grounds for confinement continue to exist, with the same burden of proof set on the state as for initial confinement. *See* K.S.A. 59-29a08.

> The burden of proof at the hearing for transitional release shall be upon the state to prove beyond a reasonable doubt that the person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in repeat acts of sexual violence.

K.S.A. 59-29a08(g); *see also* K.S.A. 59-29a07(a), (e) (setting a "beyond a reasonable doubt" standard for initial confinement). It is only at the *probable-cause* hearing that the burden of proof is on the resident. K.S.A. 59-29a08(d). (The Court is not required to accept Hay's legal conclusions asserting the contrary, *see* Doc. 8 at 22.) And that is not a change from before as the 2017 legislative clarification to K.S.A. 59-29a08 accomplished through L. 2017, ch. 83, § 1(d),

regarding that burden of proof merely codified an earlier 2012 decision by the Kansas Supreme Court in *In re Burch*, 296 Kan. 215, 225 (2012). The court had held that because the SVP-resident petitioner "seeks the affirmative of the issue" – that is, that probable cause exists to believe that the resident's mental abnormality has so changed that he is safe to be placed in transitional release – "it is logical to require him to bear the burden to prove his petition." *Id.* So the legislative change was not a change in the law compared to when *Hendricks* and *In re Hay* decided that the KSVPA was not punitive. *See Hendricks*, 521 U.S. 346, 369 (1997); *In re Hay*, 263 Kan. 822, Syl. ¶¶ 2, 13 (1998). And Kansas law actually assists Hay with meeting the burden of proof for probable cause:

> because a sexually violent predator bears the burden to establish probable cause at an annual review hearing, the district court must consider the evidence in the light most favorable to the committed person and resolve all conflicting evidence in that person's favor.

*Burch*, 296 Kan. at 225. So periodic reviews still occur and with the same burden of proof.

Kansas choosing to provide additional safeguards beyond those required by the U.S. Constitution still does not render the proceedings criminal. *See Hendricks*, 521 U.S. at 364-65, 368. As a matter of law, treatment is still not required when no adequate treatment is available. *See* Hendricks, 521 U.S. at 365-66. The KSVPA still has treatment as at least an ancillary goal. *See, e.g.,* K.S.A. 59-29a01(a), -29a07(a)-(b), (d), -29a09, -29a12(a), -29a22(b)(3). SPTP residents continue to be housed separately from inmates and are overseen by staff separate from the department of corrections. (Doc. 8 at 2.) And, as argued above, Hay does not have constitutional standing to raise claims based on inadequate treatment, so he cannot raise alleged changes in treatment as grounds for the KSVPA being punitive. Regardless, the other ten considerations would outweigh that one and still lead to the conclusion that confinement under the KSVPA is civil and not punitive.

Accordingly, Hay's civil commitment remains non-punitive.

**VII.    Hay's Fifth-Amendment and Eighth-Amendment claims fail because his civil commitment is not punitive.**

The Fifth-Amendment's prohibition on double jeopardy and the Eighth Amendment's prohibition on cruel and unusual punishment only apply to criminal prosecutions and punishments, not civil commitments under the KSVPA. *Kansas v. Hendricks*, 521 U.S. 346, 369-70 (1997); *In re Hay*, 263 Kan. 822, Syl. ¶¶ 2, 13 (1998). Here, Hay alleges double jeopardy (Doc. 8 at 5, 13, 16, 23) and cruel and unusual punishment (Doc. 8 at 5, 13, 15-16, 20-22). But, because the continuation of Hay's commitment was not punitive, neither prohibition applies. Hay's Fifth- and Eighth-Amendment claims should be dismissed for failure to state a claim.

**VIII.    Hay's Sixth-Amendment and Fourteenth-Amendment due-process claims fail to state a plausible claim.**

Hay argues his due process rights have been violated under both the Sixth and Fourteenth Amendments. But "[t]he Sixth Amendment right to jury trial, limited to 'criminal prosecutions,' does not extend to civil commitment proceedings." *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1256 (10th Cir. 2008). Because Hay's continuation of commitment is not punitive but civil, his Sixth-Amendment claims should be dismissed for failure to state a claim.

With regard to the Fourteenth Amendment, Hay argues that due process has been violated in several ways. He claims "the Patient's 'Bill of Rights' was changed." (Doc. 8 at 14.) (He appears to be referring to K.S.A. 59-29a22(b), the SPTP-specific statute enacted in 2007 to apply instead of K.S.A. 59-2978. L. 2007, ch. 170, §§ 1, 3(d).) But he does not explain how any change harmed him, and it does not violate due process for the legislature simply to change a law. *See Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 283-85 (1984)).

Hay says he should not be confined because he believes his mental abnormality is in

remission. (Doc. 8 at 20.) But claims challenging his civil commitment are barred by *Rooker-Feldman* and *Heck v. Humphrey*, as argued above.

He complains that he is not allowed to be present or participate in his periodic review hearings. (Doc. 8 at 20.) But claims collaterally attacking the state-court hearings are barred by *Rooker-Feldman* and *Heck*. Plus, the right to confront witnesses – contained in the Sixth Amendment – applies only in criminal proceedings and therefore does not attach to civil proceedings. *Hassoun v. Searls*, No. 1:19-cv-00370, 2020 WL 408349, *6 (W.D.N.Y. Jan. 24, 2020) (collecting cases). And with regard to the Fourteenth Amendment, Hay has lost some privileges as a result of his civil commitment, so, similarly to an incarcerated prisoner, he "does not have an absolute right to be present at his civil trial or pretrial proceedings." *See Hawkins v. Maynard*, 89 F.3d 850 (table opinion), 1996 WL 335234, at *1 (10th Cir. June 18, 1996); *see also Kocsis v. Kendall*, No. 14-2167-EFM, 2016 WL 7852315, at *1 (D. Kan. June 2, 2016).

Hay complains that his criminal history is discussed at his annual interviews and in his annual reports. (Doc. 8 at 20.) But "[t]he critical issues in a sexual predator case make the evidence of prior conduct, charged or uncharged, material evidence in the case." *In re Hay*, 263 Kan. 822, 838 (1998). So the Kansas Supreme Court held the *state statutory evidence rules* did not bar consideration of such evidence. *Id.* And the federal due-process clause does not have such specific evidence rules regarding criminal history. *See* U.S. Const., amend. XIV.

Hay complains that he is not allowed to see the SPTP Progress Review Panel due to his lack of participation in treatment (Doc. 8 at 21), that "[t]he SPTP Progress Review Panel does not offer an appeal process . . . if they reject his advancement in the Program" (Doc. 8 at 21), that the SPTP Progress Review Panel does not have to tell him who voted against him or why (Doc. 8

at 21), that the SPTP Progress Review Panel is mentioned in the KSVPA[5] (Doc. 8 at 22), and that "this Honorable Court" cannot overrule the panel and assign him to a particular level of treatment (Doc. 8 at 23). But "Plaintiff does not have a liberty interest in being at a particular phase level of the SPTP." *Burch v. Jordan*, No. 07-3236, 2010 WL 5391569, at *1 (D. Kan. Dec. 22, 2010) (citing *Williams v. DesLauriers*, 38 Kan. App. 2d 629, 638, 172 P.3d 42 (2007)). So procedural due process does not attach to proceedings before the SPTP Progress Review Panel or to his level of treatment. *See Burch v. Jordan*, 2010 WL 5391569, at *1 ("Plaintiff does not have a liberty interest"). Additionally, the state court *can* assign Hay to transitional release over the objection of the Secretary of KDADS. K.S.A. 59-29a08.

Similarly, Hay complains regarding the policies around the resident grievance process. (Doc. 8 at 21-22.) But "there is no federal constitutional right to an institutional grievance procedure" for SPTP residents. *Merryfield v.* Jordan, 431 F. App'x 743, 744, 750 (10th Cir. 2011). So procedural due process does not attach to the resident grievance process. *See id.*

Hay appears to complain about the way SPTP policies are promulgated, but he has not cited any authority to show that the promulgation of these policies violates any federal rights. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840-41 (10th Cir. 2005) (saying a *pro se* litigant bears the responsibility to construct his or her own arguments).

Hay complains that he has not received an in-camera annual-review hearing and journal entries from courts. (Doc. 8 at 22.) But he has not plausibly alleged causation by the Defendants for these claims, as argued above.

Hay argues that SPTP staff conducting his annual interviews virtually by Microsoft

---

[5] The panel is only mentioned in the KSVPA in the definitions section, K.S.A. 59-29a02(m), and in a section on conditional release, K.S.A. 59-29a19(a), which does not apply to Hay, as he is not on conditional release.

Teams violates K.S.A. 60-235 (a Kansas statute regarding physical and mental examinations during discovery in a civil lawsuit in state court) and due process. (Doc. 8 at 22.) But state-law claims are barred by Eleventh-Amendment immunity (as argued above), he has not alleged that the annual interview process is part of a court case, and he has cited no authority for claiming that a state government conducting business virtually somehow violates due process.

Hay complains that the burden of proof shifts to him during post-commitment proceedings. (Doc. 8 at 22.) But as discussed in section VI above, the legal burden of proof has not changed for these proceedings since the *Hendricks* and *In re Hay* decisions. Accordingly, the burden of proof being assigned to Hay's affirmative position is not a violation of due process.

Hay complains that it violates due process for the legislature to have changed the law so that he can only petition for release from SPTP periodically. (Doc. 8 at 22.) But due process only requires the state "to periodically 'consider the propriety of ongoing commitment'" *Garcia v. Abbate*, No. 23-CV-14419, 2024 WL 517987, at *6 (S.D. Fla. Feb. 9, 2024) (quoting *J.R. v. Hansen*, 803 F.3d 1315, 1323 (11th Cir. 2015)). Hay's periodic reviews under the KSVPA satisfy this requirement. Further, habeas corpus serves as a backup to the periodic review. *See J.R.*, 803 F.3d at 1324; *Merryfield v. State*, 44 Kan,. App. 2d 817, 819, 241 P.3d 573 (2010) ("A person involuntarily confined in the Kansas Sexual Predator Treatment Program may petition the court under K.S.A. 60–1501 for a declaration that the confinement is wrongful.").

Therefore, Hay's due-process claims should be dismissed for failure to state a claim.

## IX.    Hay's Fourteenth-Amendment equal-protection claims fail because he is not similarly situated to the referenced groups.

"The first element of an equal protection violation is that the plaintiff was intentionally treated differently from others similarly situated." *Shifrin v. Toll*, 483 F. App'x 446, 449 (10th Cir. 2012). Hay claims his civil commitment violates Fourteenth-Amendment equal protection

because his civil commitment differs (1) from incarceration of inmates and (2) from civil commitment outside of SPTP. (Doc. 8 at 13-14; *see also id.* at 1, 23.) But, as in *In re Hay*, "there exist clear distinctions between this class and other classes which are not similarly treated." *In re Hay*, 263 Kan. 822, 832-33 (1998). SVP residents are not similarly situated to KDOC prisoners, *Merryfield v. Jordan*, 584 F.3d 923, 924-25, 927 (10th Cir. 2009), or "to other civilly committed individuals." *Taylor v. San Diego Cnty.*, 800 F.3d 1164, 1170-71 (9th Cir. 2015); *accord Aruanno v. Corzine*, 687 F. App'x 226, 230 (3d Cir. 2017). So Hay's equal-protection claims should be dismissed for failure to state a claim.

## X. Hay's ex-post-facto claims fail because they are premised on his original commitment being wrongful, his commitment is not punitive, and they are not premised on any legislative acts.

Hay claims that the KSVPA violates the Ex Post Facto prohibition: (1) because past cases that held that civil commitment under the KSVPA is not punitive were allegedly wrong (Doc. 8 at 4-5, 13); (2) because Hay supposedly completed the program for SPTP in prison prior to his initial civil commitment (Doc. 8 at 16); (3) and because the review hearings re-try Hay "using the same 4 criteria that the State used to have him originally civilly committed" (Doc. 8 at 23). All of these arguments, at least as phrased, are premised on his original civil commitment being wrongful, and the Court has already dismissed that claim (Doc. 34 at 10), which cuts out the foundation of Hay's arguments. Further, because the review hearings are not punitive but civil, the Ex Post Facto prohibition does not apply. *See Kansas v. Hendricks*, 521 U.S. 346, 370-71 (1997); *Calder v. Bull*, 3 U.S. 386, 397 (Paterson, J.), 399 (Iredell, J.) (1798). What is more, the prohibition is "a limitation upon the powers of the Legislature," *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001), but none of Hay's arguments regarding it involve any legislative change since his initial civil commitment. For these reasons, the ex-post-facto claims should be dismissed for

failure to state a claim.

**XI.**    **Alternatively, Plaintiff's demand for a jury trial should be stricken if only equitable relief would remain.**

If the only claims for relief remaining are equitable in nature, such as claims seeking declaratory and injunctive relief, then those claims for equitable relief alone would not support a jury-trial demand. *See Pegg. v. Gen. Motors Corp.*, 793 F. Supp. 284, 287 (D. Kan. 1992); *Parsons v. Beford, Breedlove, & Robeson*, 28 U.S. 433, 446-67 (1830) (cited approvingly by *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999)). Accordingly, in that circumstance, the Court should strike Plaintiff's demand for a jury trial.

## CONCLUSION

For these reasons, Defendants request that the Court dismiss Hay's claims against them for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim. Further in the alternative, if only claims for equitable relief remain, Defendants request that the Court strike Hay's demand for a jury trial.

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

/s/ Matthew L. Shoger
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January, the foregoing document was filed with the clerk of the court by using the CM/ECF system, with a copy served by means of first-class mail, postage prepaid, addressed to:

Kenneth Mark Hay
Larned State Hospital
1301 KS Highway 264
Larned, KS 67550
*Plaintiff, pro se*

/s/ Matthew L. Shoger
Matthew L. Shoger
Assistant Attorney General