

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF KANSAS**

KENNETH MARK HAY,    )
        Plaintiff,   )
          )
          )
Versus          )     <u>CASE NO. 5:23-CV-03175-HLT-GEB</u>
          )
          )
Ms. Keri Applequist, et al.,  )
      Defendants,  )

<u>**Plaintiff's Motion in Response to the Defendants Reply in Further Support of their Motion**</u>
<u>**for Judgment on the Pleadings**</u>

      **COMES NOW,** the Plaintiff, Mr. Kenneth Mark Hay, Pro Se, before this Honorable Court to file this Plaintiff's Motion in Response to the Defendants Reply in Further Support of their Motion for Judgment on the Pleadings.

      The Plaintiff offers the following in support of this Motion:

1.  The Defendants and Mr. Shoger cannot deny that despite the Plaintiff not participating in the "treatment" provided, the Plaintiffs behavior and actions **was not** Sexually Deviant and Sexually Violent and **has not** been since **July 1991.**

    a.  Pursuant to the DSM-V-TR that is **Full** and **Complete** Remission because it has been over 10 years since the Plaintiffs last Sexually Deviant and Sexually Violent Action and Behavior.

        i.  Since the Defendants and Mr. Shoger have denied this **Truth** and **Fact** about the Plaintiff and this Case and Pleadings they have Violated their Own State (their Client) Statutes and Federal Case Law, which states: *"When the Plaintiffs Mental Abnormality or Personality Disorder so changes that he is safe to be at large he is to be released from secure confinement."* (**Please see *K.S.A. 59-29a08(d)*** At the annual review hearing, the burden of proof shall be upon the person to show

*probable cause to believe the person's mental abnormality or personality disorder has significantly changed so that the person is safe to be placed in transitional release" and **Kansas v. Hendricks**, 521 U.S. 346: "If that determination were made, the person would then be transferred to the custody of the Secretary of Social and Rehabilitation Services (Secretary) for "control, care and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large." § 59-29a07(a)."*).

    ii.   Yet, the Plaintiff continues to remain in Secure Confinement because of the Defendants and Mr. Shoger violating the Plaintiffs Constitutional and Statutory Rights.

    iii.   The Defendants and Mr. Shoger fail to understand that *Hendricks* was reversed in this manner in 2017 when the Kansas Legislature changed the Statute from its original reading in *Hendricks,* which states: *"**Finally, even without the Secretary's permission, the confined person could at any time file a release petition. § 59-29a11**. If the court found that the State could no longer satisfy its burden under the initial commitment standard, **the individual would be freed from confinement**."*

    a.   This violates the Plaintiffs Due Process Rights and is Cruel and Unusual Punishment.

2.   The Plaintiff is not contesting his Initial Commitment and is not having any *Rooker-Feldman* issues.

    a.   The Plaintiff does not know where Mr. Shoger was between 1992 and 1996 when the Kansas Sexually Violent Predator Act and the Kansas Sexual Predator Treatment Program was being designed for the Plaintiff.

       i.   Mr. Paul Morrison stated before the Honorable Jerry Moran's Kansas House Judiciary Committee in March 1994, *"And finally consider Kenneth Hay. He is currently serving time in a Kansas State Correctional Facility for luring small girls to his automobile and masturbating in front of them."*

    a.   Mr. Morrison was the District Attorney that prosecuted the Plaintiff in Johnson County in Criminal Court in 1991 and then prosecuted him for Civil Commitment in Johnson County Civil Court in April 1995.

    a.  Mr. Shoger was not present for these court proceedings or the Kansas House
        Judiciary Hearings, but he argues that the Plaintiff is contesting his Initial
        Commitment in this pleading.

3.  The Plaintiff has used multiple exhibits in these pleadings, from the inception of the case
    and the filing of the Plaintiffs Complaint, **proving** the **True** and **Factual** Legislative
    Intent of the Act and the Program.

    a.  Besides the Defendants and Mr. Shoger's **ONLY** Discovery in these pleadings are
        the Plaintiffs C.I.T.P.'s, **past** Annual Reviews and Annual Review Hearing Journal
        Entries and then they have the Audacity to state that the Plaintiff is arguing his
        Initial Commitment.

        i.  Their hypocrisy seems to know no bounds!

    b.  The Plaintiffs Crimes Qualified him for the Act and the Program and is the reason
        for the passing of the Act and the Program in 1994. The Plaintiffs crimes also
        triggered his Initial Commitment in 1995 and therefore connect his initial
        commitment to the Legislative Intent of the Act and the Program.

    c.  The passing of the Act and the Program was not on the News in Kansas in 1994, but
        the Plaintiff was on the News 3 times daily for 1 ½ months before his arrest in July
        1991. How can this Act and Program be so just and good?

    d.  The Statute is called a Sexually Violent Predator **Act** and not a **Program.**

4.  The Kansas House of Representatives in March 1994 had an Oversight Hearing on
    Senate Bill 525 on whether or not the Kansas Sexually Violent Predator Act would
    become law.

    a.  Numerous Law Enforcement Officials, Medical and Mental Health Professionals,
        Law Professionals and Larned State Hospital Administrators testified before
        Honorable Jerry Moran's Judiciary Committee. This Committee acted more like a
        "witch hunt" than a discussion on how to give the people committed under the Act
        Care, Therapy, Treatment and Rehabilitation that the Kansas Legislature used in the
        Statutes of the Act.

    b.  Ms. Carla Stovall testified, *"a knot would always grow in my stomach. I knew the
        rapists or child molesters were being turned loose on an unsuspecting public to
        offend. I knew there was at least one woman or one child, but probably more, who*

*were going to fall victim to this **animal**. It was as certain as the sun rising the next morning. And there was nothing I could do to prevent it. That was the sickening thing. We were condoning the future victimization – permitting it – allowing it. Because we couldn't stop it."* (Please see Plaintiff's Exhibit A from Plaintiffs Complaint).

   c. Ms. Stovall continued to testify by opining, *"The situation in Kansas is no better with sentencing guidelines than under indeterminate sentencing. The lesson is that under guidelines fewer child sexual abuse crimes will result in incarceration because of the high number which carry presumed probation. **This Bill (Senate Bill 525) would allow us to stop the sure and certain victimization. It would allow us to kept the Sexually Violent Offenders Locked Up INDEFINATELY. This is our OBLIGATION to provide for Public Safety in this way."*** (Please see Plaintiff's Exhibit A from Plaintiffs Complaint).

   d. This is not Civil, but Punitive and violates *Kansas v. Hendricks,* 521 U.S. 346 and *Foucha v. Louisiana,* 504 U.S. 71 for not being CIVIL commitment or a CIVIL statutory scheme with a non-punitive effect, but rather Punitive, Ex Post Facto, Double Jeopardy.

5. Mr. Jim Blaufuss stated before the Kansas House Judiciary Committee in March 1994, *"The most effective way to protect women and children from sex offenders is to send them to **prison** for the rest of their life. At this time a life sentence without parole is not possible. I do not believe anyone is willing to sacrifice a loved one in the hope that a sex offender should have another chance to start a new life. **There is no known TREATMENT that will change the Behavior of these Violent Felons."*** (Please see Plaintiff's Exhibit B from Plaintiffs Complaint).

   a. This proves that the Legislative Intent was to NEVER be Civil, but Punitive, Ex Post Facto, Double Jeopardy and Cruel and Unusual Punishment and reverses *Kansas v. Hendricks,* 521 U.S. 346 and *Foucha v. Louisiana,* 504 U.S. 71.

6. In 1992 the Kansas Legislature did not have the Votes and/or Money to pass the Kansas Sexually Violent Predator Act. During this time the State of Kansas was considering Mr. Donald Gideon as the first resident to be committed under the Act and sent to SPTP.

    a.  Tragically, Mr. Gideon proved himself to be the monster he was thought to be when he kidnapped, raped and murdered Ms. Stephanie Schmidt in July 1993.

        i.  Ms. Stovall who was on several of Mr. Gideon's Parole Boards and would vote to pass him because she did not feel safe about his release and rightly so.

       ii.  The Act and SPTP was meant for Offenders and Felons that are Sexually Violent Predators such as Mr. Gideon and not the Plaintiff. This is Cruel and Unusual Punishment.

7.  Senator Vancrum testified in March 1994, *"The Bill is narrowly tailored to focus on the smaller number of habitual sex offenders who, because of their psychological makeup, pose an **immediate** danger to the public as **soon** as they are released from prison."*

    a.  The Plaintiff is a repeat Sex Offender, but his Sexual Offenses are not of the Violent and Horrific nature and shock of that of Mr. Gideon.

    b.  Once Mr. Gideon committed his atrocity the Kansas Legislature had their votes and funds for the Act. They could then write "blank checks" for getting the Act passed as law.

    c.  The Act was passed as an earmark bill and was done secretly.

       ii.  The Act was passed so quickly and quietly that SPTP didn't even exist. It would take the ruling in *Kansas v. Hendricks,* 521 U.S. 3465 to ensure that a "program" existed.

      iii.  The Act has now been so changed by the Kansas Legislature as to become a "catch all" for almost any and all sex offenders. This means that a person can be simply  charged with a sexually violent offense and still be civilly committed as a sexually violent predator. This is even true if a person were to win a jury trial or be sentenced to a lesser offense in a plea bargain.

8.  The Superintendent of the Larned State Hospital testified in March 1994 to the Kansas House Judiciary Committee that LSH did not have the staff, room, capacity, funding or qualifications to House, Care for, Treat, give Therapy go, or Rehabilitate the persons committed under the Act. He also went further and stated that the Hospital was losing money and that SRS (now KDADS) was considering shutting down LSH.

    a.  This means that SPTP/KSVPA saved LSH and Larned, Kansas otherwise the Hospital would be closed and a museum and Larned would be a "ghost town".

9. Ms. Donna Whiteman, Secretary of SRS in 1994 testified in March 1994 to the Kansas House Judiciary Committee: *"Currently, the State Security Hospital at Larned, Kansas has approximately 30 available beds. The first year of Mental Health Reform downsizing closed 30 adult beds, which allowed us to correct overcrowding on the Security Behavior Ward, but created no new available beds. The final two years of reform could make from 40 to 60 new beds available, assuming appropriate remodeling. Should the expected bed need created by S.B. 525 exceed 70 to 90 beds a new facility would be required."* (Please see Plaintiff's Exhibit C from Plaintiffs Complaint).

   a. This new facility became the Isaac Ray Building which houses several programs, which include: SPTP, PSP, CSU, and SSP. The Plaintiff lives on one of the Behavior/Gang Units of SPTP.

   b. Ms. Whiteman pointed out in her testimony that the cost of a 300 bed program of SPTP would cost $9, 000, 000.00 dollars and the estimated cost of SPTP in 2023 is $30, 000, 000.00 dollars. **Where is $21, 000, 000.00 dollars going? To whom? Why?** (Please see Plaintiff's Exhibit C from Plaintiffs Complaint).

      i. That is a total cost of $609, 000, 000.00 dollars over 29 years!

10. Ms. Donna Whiteman continued to testify by stating: *"If the process requires professionals to state a Sexual Predator is CURED or NOT likely to repeat acts of violence before a person is Discharged, the professionals will not make such statements which might place their reputations and licenses on the line. **This means the patients may never be released."*** (Please see Plaintiff's Exhibit D from Plaintiffs Complaint).

   a. This is Cruel and Unusual Punishment and violates the Plaintiff's Substantive Due Process Rights. This violates *Hendricks and Foucha.*

   b. This is also substantiated by *Kansas v. Crane*, 534 U.S. 407 because around 2 weeks after his release Mr. Crane raped a woman in Missouri and asked her, *"How does it feel to be raped by a predator?"*

      i. However, the U. S. Supreme Court ruled in *Hendricks* that SPTP had to be Treatment and not just warehousing otherwise they would strike it down.

11. The "Therapists" of SPTP are <u>Social Workers</u>. They are Licensed and Certified with the Kansas Behavioral Sciences Regulatory Board in Topeka, Kansas. However, Mr. David Fye, J.D., the Executive Director of the BSRB said in a letter to Resident Robert Davis,

Jr. on March 21, 2023: *"You asked for the requirements in the State of Kansas for Sex Offender and/or Sexual Predator Treatment/Therapy. Response: **We do not have this information.**"* (Please see Plaintiff's Exhibit E from Plaintiffs Complaint).

   a. Mr. Fye continued to opine in the same letter with: *"You asked for the Standard for Sex Offender and/or Sexual Predator Treatment/Therapy in the State of Kansas and the United States. You asked whether the Sexual Predator Treatment Program at Larned State Hospital meets this and why? Response: **We do not have this information to answer your questions and are unable to provide legal advice."*** (Please see Plaintiff's Exhibit E from Plaintiffs Complaint).

      i. This substantiates the Plaintiff's statement that SPTP is not and never was Treatment or Therapy, but rather Ex Post Facto and Double Jeopardy continued Punishment, Confinement, and Incarceration. **This reverses *Hendricks.***

12. The Plaintiff isn't even getting the 3 hours of Process Group per week that *SPTP Policy 6.1(II)(B)(3)* states. This is Cruel and Unusual Punishment and a violation of the Plaintiff's Substantive Due Process Rights.

13. *Howe v. Godinez,* 558 F. Supp. 3d 664 states that the Plaintiff is to be receiving a Minimum of 5-7 hours of Therapy/Treatment per week and this cannot include: Gym, Yard, Social Recreation, Pottery, and Gardening as SPTP does now.

14. Why doesn't the BSRB, most especially the Executive Director of the BSRB, know about these Mandatory Minimum Requirements for Sex Offender/Sexual Predator Treatment/Therapy when that is his job and this ruling came out in 2021?!

15. Therefore, the Legislative Intent of the Kansas Sexually Violent Predator Act and the Kansas Sexual Predator Treatment Program was NEVER to be Therapy and Treatment or to be CIVIL. This makes the KSVPA and SPTP Unconstitutional and Punitive and the Act and Program MUST be repealed and the Plaintiff released.

   a. The Defendants know this and are responsible for creating and administering Policies in SPTP/LSH that continue these abuses and injuries to the Plaintiff and the Defendants also administer the Unconstitutional and Punitive Statutes of the KSVPA/SPTP on the Plaintiff daily as an ongoing and continuous injury done to the Plaintiff.

   b. So the Defendants and Mr. Shoger's arguments here are in error.

16. The Plaintiff now concedes that he is not entitled to monetary relief in these pleadings and is barred from seeking such relief by the *11ᵗʰ Amendment*.

17. The Plaintiff has a Constitutional and Statutory **Right** to Adequate Treatment because, **according to the Defendants and Mr. Shoger**, that is the **ONLY** "Clear Path for Release for the Plaintiff."

   a. Therefore without the Right to and for Adequate Treatment than the Plaintiffs Due Process Rights are being violated by the Defendants and Mr. Shoger. This also is Cruel and Unusual Punishment.

   b. Once again the Defendants and Mr. Shoger blame the Plaintiff for arguing about Adequate Treatment and then bash him over the head for being "treatment resistant" and then they use the Plaintiffs C.I.T.P.'s, **past** Annual Reviews and Annual Review Hearing Journal Entries and then they have the Audacity to state that the Plaintiff is arguing his Initial Commitment.

   c. The Plaintiff states that SPTP/the Program is not and has never been Care, Therapy and Treatment, but rather extended confinement and incarceration past the Plaintiff's release date.

   d. The Plaintiff completed Sex Offender Treatment in prison. This makes SPTP/the Program Ex Post Facto, Double Jeopardy and Cruel and Unusual Punishment.

   e. The Plaintiff states that if the Sex Offender Treatment he received in prison was not the Therapy and Treatment he needed then why did the Plaintiff not come to SPTP/the Program rather than to prison. This makes going to prison for the Plaintiff Cruel and Unusual Punishment.

   f. Why would the Kansas Department of Corrections accept a person who has a mental abnormality or personality disorder that predisposes him to sexually offend to prison? This is Cruel and Unusual Punishment.

   g. Why would the Johnson County District Attorney's Office and Public Defender's Office send a person who has a mental abnormality or personality disorder that predisposes him to sexually offend to prison? This is Cruel and Unusual Punishment.

   h. Why would a Judge sentence the Plaintiff to prison when the Plaintiff has a mental abnormality or personality disorder that predisposes him to sexually offend? This is Cruel and Unusual Punishment.

i.   Your Honor, this is the trouble that is caused by the SPTP/the Program. This needs to be rectified because the Defendants are still causing this harm and injury to be done to the Plaintiff.

j.   The Plaintiff states that there is no Individualized Care, Therapy and Treatment in SPTP/the Program. The Plaintiff is treated the same as all other residents in SPTP/the Program. The Plaintiff does not have any convictions for Pedophilia, but rather Exhibitionism **(5 Misdemeanors)** and therefore should not be given the Care, Therapy and Treatment as one. This is Cruel and Unusual Punishment and the Defendants know it.

k.   The Plaintiff goes to Process Group with pedophiles and the psychology and behavior of that crime is different from that of the Plaintiff's. However, the Defendants or Mr. Shoger don't care about the Plaintiff's Rights, Care, Therapy or Treatment.

l.   The Defendants and Mr. Shoger have constructed and executed SPTP/the Program as another prison in the State of Kansas rather than a Treatment Center. The Plaintiff is not supposed to be Rehabilitated and Released. This is a violation of Ex Post Facto, Double Jeopardy and Cruel and Unusual Punishment.

m.   The Defendants use "blanket policies" and "mass punishment" on a daily basis in SPTP/the Program.

n.   The Plaintiff states what he calls "the Rusty MacFarland Policy" to this Honorable Court. Mr. MacFarland was a pedophile in SPTP/the Program who would kiss his TV and hump his room floor when children he found attractive were on the TV screen. The Defendants gave him no Individualized or C.B.T. (Cognitive Behavioral Therapy), but rather took his TV and this drove Mr. MacFarland to go to the "black market" to rent and buy TV's to satisfy his sexual urges. Eventually the Defendants took that away from him and he attacked a female staff that fit his sexual template. The Defendants punished another resident that came to the staff's defense.

i.   The Defendants changed the Resident Media Policy (*SPTP Policy 5.18*) because of this incident. They believe that all residents, not just those similarly situated, but even the Plaintiff to be the same as Mr. MacFarland.

o.  When a resident escaped on Wednesday, June 30, 2021 the Defendants used this to institute penal policies and procedures to punish the Plaintiff and those similarly situated even more than they were in SPTP/the Program.

p.  The Plaintiff is not allowed to use any of the tools that SPTP/the Program says they have given him in Tier 1 (Skill Acquisition) because his TV channels are censored and blocked because of the rating **(which is not X-rated).**

    i.  This proves that the Plaintiff is not supposed to be Released. If the Plaintiff cannot be trusted to control himself with what he sees on TV, regardless of how brief, than SPTP/the Program is not Care, Therapy and Treatment and is the continued Confinement and Incarceration the Plaintiff says it is. SPTP/the Program is a sham as Justice Kennedy warned about in *Hendricks.* The Defendants know this, but don't want to be held accountable.

q.  The Plaintiff is not receiving the required 3 hours of Process Group per week that *SPTP Policy 6.1(II)(B)(3)* states. This is Cruel and Unusual Punishment. This violates the Plaintiff's Due Process Rights and doesn't give the Plaintiff a clear path for release. The Defendants know this, but are apathetic to the Plaintiff and his plight.

r.  The Plaintiff is not receiving the National Minimum Standard of hours for Sex Offender Therapy and Treatment that the 8th Circuit ruled on in *Howe v. Godinez,* 558 F. Supp. 3d 664. This Mandatory Minimum is 5-7 hours per week. This is Cruel and Unusual Punishment. This violates the Plaintiff's Due Process Rights and doesn't give the Plaintiff a clear path for release. The Defendants know this, but are apathetic to the Plaintiff and his plight.

s.  In *Hendricks* the Supreme Court acknowledged that residents were getting 31.5 hours of treatment per week. The Defendants state that this includes: Gym, Yard, Social Recreation, Pottery, Gardening, etc. But these are not therapy and treatment and certainly not taught by a Board Licensed and Certified Sex Offender/Sexual Predator THERAPIST. This violates the Plaintiff's Due Process Rights and doesn't give the Plaintiff a clear path for release. The Defendants know this, but are apathetic to the Plaintiff and his plight.

t. C.I.T.P.'s (Comprehensive Integrated Treatment Plan) are conducted every 90 days. They last 5-10 minutes in length. The Plaintiff's Care, Therapy, and Treatment are not discussed, but simply his cooperation with the Program and his behavior in the Program. The Plaintiff's Safety Plans, Relapse Plan, R.S.A.'s (Rational Self Analysis – Thinking Reports), Journal Entries, Sexual Fantasy/Thought Logs, Tier 2/3 Applications, Support/Accountability Group, etc. are never discussed.

u. The SPTP Treatment Team and SPTP Clinical Team *(which the Defendants are members of )* do not participate in the Plaintiff's C.I.T..P.'s, but they do make decisions on his Care, Therapy and Treatment daily/weekly, **whether they interact with him or not.**

v. This then cannot be Comprehensive or Integrated and means that C.I.T.P.'s are Plausible Deniability for the Defendants and "Legal Window Dressing" for them when they have to defend themselves in Lawsuits and the Plaintiffs (and those similarly situated) Annual Review Hearings.

w. The Plaintiff states that the **ONLY** resemblance of Care, Therapy and Treatment in SPTP/the Program are: The Plaintiff's Relapse Plan, R.S.A.'s (Rational Self Analysis – Thinking Reports), Journal Entries, Fantasy/Thought Logs,

x. This makes SPTP/the Program **self** administered Care, Therapy and Treatment **at best**.

   i. This violates *Hendricks* and the Statutes of the Act because the Plaintiff is here for the **Defendants** to give him Care, Therapy and Treatment. This is why *SPTP Policy 6.1* exists!

y. Therefore, the Plaintiff's Care, Therapy, and Treatment in SPTP/the Program/LSH is not Civil, but Punitive, Ex Post Facto, Double Jeopardy, Cruel and Unusual Punishment, Unequal protection of the Law, violation of Due Process, Shocking to the conscience, Intolerable conduct, Egregious, not a *"civil statutory scheme with a non-punitive effect"*, and violates *Hendricks, Foucha, Ohlinger, Blanas,* and *Youngberg.*

18. The Defendants state: *"The Rooker-Feldman doctrine turns on the nature of the claim and the relief requested, not the evidence relied upon."*

    a. The Defendants and Mr. Shoger seem to be blind to the fact and truth that in both Prayers for Relief the Plaintiff stated that the Act and the Program is and was Unconstitutional and Punitive.

        i. The Defendants and Mr. Shoger fail to realize that in order to prove this the Plaintiff must be convincingly clear that the Legislature of Kansas meant for the Act and the Program to be Constitutional and Civil, not Punitive.

    a. The Defendants and Mr. Shoger fail to realize that the Plaintiff must overcome the burden of proving that this argument is true of *Kansas v. Hendricks,* 521 U.S. 346.

    b. Which the Plaintiff proves these all to be true and factual by his exhibits which date back to March 1994 when the Act and the Program was being drafted and discussed (The Intent) by the Kansas Legislature.

19. For the same reasons above regarding the Legislative Intent of the Act and the Program the Plaintiff has **proven** that the Plaintiffs Initial Commitment **is** Unconstitutional and Punitive because the Act and the Program is Punitive, Unconstitutional and not Civil.

20. The Plaintiff has "completed" the Program 5 times in his 30 years. Even the discovery from the Defendants and Mr. Shoger prove that the Plaintiff has progressed several times in the Program, just to be knocked down by Defendant Keri Applequist because she does not like the Plaintiff or his attitude.

    a. Once again, it not about the Plaintiffs completion of the Program or Compliance with the Program, but his Behavior and Actions that matter by Statute and *Hendricks.*

21. The Defendants and Mr. Shoger can **ONLY** use Criminal History from the Plaintiff from 1991 or earlier because in the last **34 years** Mr. Hay has none, **but he is still in Secure Confinement by order of the Defendants and Mr. Shoger.**

22. The Defendants and Mr. Shoger must not understand that since the Legislative Intent of the Act and the Program was not Treatment, Care, Therapy and Rehabilitation, but continued Punishment, than the Act and the Program **cannot** be Civil, let alone a *"civil statutory scheme with a non-punitive effect."*

    a. The Declaration of Dr. Mohr provided to the Plaintiff and the Court by the Defendants and Mr. Shoger states that the Program looks like a prison, both interiorly and exteriorly.

     i.  The dissent in *Hendricks* states: *"The Plaintiff **must** be housed in the Least Restrictive Setting."*

    a.  However, that is not what the Defendants and Mr. Shoger is doing for and to the Plaintiff. This is Cruel and Unusual Punishment and certainly not a *"civil statutory scheme with a non-punitive effect."*

23. The Defendants and Mr. Shoger have **proven** that **NO** Adequate Treatment is available to the Plaintiff after 30 years and therefore how can the Plaintiff be confined in Secure Confinement, especially when he hasn't committed any acts of Sexual Violence or Sexual Deviance for 34 years?!

    a.  This is a Due Process Rights violation and Cruel and Unusual Punishment by the Defendants and Mr. Shoger.

24. The Defendants and Mr. Shoger agree with the U.S. Supreme Court that the Legislative Intent **(which the Plaintiff proved in these Pleadings)** is continued Confinement and Treatment is Ancillary.

25. Therefore how can the Plaintiff be confined in Secure Confinement, especially when he hasn't committed any acts of Sexual Violence or Sexual Deviance for 34 years?!

    a.  This is a Due Process Rights violation and Cruel and Unusual Punishment by the Defendants and Mr. Shoger.

26. Changing the Patient's Bill of Rights in 2017 the Kansas State Legislature reversed *Hendricks* by taking away **any** and **all** Due Process Rights the Plaintiff had. This makes the Act and the Program Punitive and Unconstitutional.

27. Annual Reports and Annual Review Hearings are about what the Plaintiff has done in the last Year (12 months) and not his entire life. By using the Plaintiffs Criminal History from his entire life the Plaintiff will always meet the criteria as a sexually violent predator and never be released.

    a.  The Defendants and Mr. Shoger work for and serve their Client (the State of Kansas) and therefore they will do whatever they can to keep the Plaintiff in Secure Confinement.

    b.  By always using the Plaintiffs criminal history against him the Defendants, Mr. Shoger, and the Program are making the **10** Relapse Prevention Plans, the R.S.A.'s,

the Fantasy Logs, the Journals, the Process Group attendance and participation, C.I.T.P.'s attendance and participation and the Program Null, Void and Moot.

     i.  This then makes the Act and the Program Punitive and Unconstitutional.

28. By the Defendants and Mr. Shoger denying the Plaintiff the Constitutional Right to be present at his Annual Review Hearing the Plaintiff asks the Defendants, Mr. Shoger and the Court how the Act and the Program has Due Process Rights and Protections for the Plaintiff?

29. The Defendants and Mr. Shoger are incorrect again about the Annual Reviews being Periodic. The Plaintiffs Annual Reviews are to be held and conducted one year from his last Civil Commitment Order by Johnson County.

30. The Plaintiff states that the Nature and Action of his Confinement and Incarceration in the Sexual Predator Treatment Program at Larned State Hospital is Unconstitutional, Shocking to the conscience, Intolerable Conduct, Egregious and Punitive. The Defendants know this, but the Plaintiff's Confinement and Incarceration in SPTP at LSH gives them employment and financial security.

    a.  Not to mention that SPTP/LSH gives the Defendants the opportunity to "rule" without any system of checks and balances. It is basically "absolute power corrupts absolutely."

    b.  The Plaintiff also states that his Confinement and Incarceration in SPTP at LSH violates *Ohlinger v. Watson,* 652 F.2d 775, *Jones v. Blanas,* 393 F.3d 918 *and Youngberg v. Romeo*, 457 U.S. 307 because his Confinement and Incarceration is lesser to and not equal to his Criminal Counterparts in the Kansas Department of Corrections.

       i.  The Defendants know this because they are the ones responsible for violating his rights in this area by taking away his rights of confinement/incarceration.

          1.  This is a *14th Amendment* violation as well.

    c.  The Plaintiff's *14th Amendment* Right to Equal Protection of the Law is violated by the Defendants because unlike those that are Civilly Committed in other Programs (PSP, SSP, CSU, and ATC) the Plaintiff has to pay for his Care and Treatment pursuant to *K.S.A. 59-29a04(f).*

    d.  The Plaintiff has to pay for Eyeglasses, Braces, etc. unlike those that are civilly committed under different programs.

    e.  The Plaintiff has been served with a bill for every medical expense he has accrued in SPTP from every OUTSIDE Medical Provider he has seen and been to.

        i.  The Defendants are responsible for this and yet they do nothing to cease these injuries to the Plaintiff.

31. There is no "Therapeutic Environment" in SPTP. The "Program" looks, acts, feels and runs/is operated like another prison in Kansas. The Defendants are responsible for this because they order staff to enforce this prison like attitude and mood on the Plaintiff by how their staff execute SPTP/LSH Policies.

    a.  The Isaac Ray Building is the SPTP equivalent to KDOC's Maximum Security Housing. However, the Plaintiff would have more Yard time in prison than in SPTP. Yard would not be shutdown due to "shortness of staff" or too hot or too cold.

    b.  Security walk thru the Plaintiff's unit and even do so with handcuffs and chains clanging. This activates the Plaintiff's PTSD of being in the KDOC.

    c.  The Plaintiff would receive Lay-In Pay in the KDOC, but not so in SPTP. If he wants money he either has to admit he's a predator and in need of treatment so that he can "earn" his purple and VTP job or he has to rely on outside monetary funds. This is a 1st *Amendment* Rights violation of Freedom of Speech of the Plaintiff by the Defendants.

    d.  The Plaintiff is escorted everywhere he goes in SPTP, despite it being a Secure Facility and Enclosed.

    e.  The Plaintiff cannot have 6-8 hour visits on the weekends like he would in the KDOC, even in Maximum Security.

    f.  The Plaintiff is subjected to a curfew with locked doors at night. The Defendants know that *Hendricks* states that the Plaintiff is to be in the Least Restrictive Setting. The Defendants know that the residents on Tier 2 don't have a curfew. This is a 14th *Amendment* Rights violation of the Plaintiff by the Defendants for Unequal Protection of the Law and Cruel and Unusual Punishment.

g.  The Plaintiff's Confinement and Incarceration in SPTP/LSH/the Program can **ONLY** be justified if he is **still** dangerous and violent to himself and/or others as *Hendricks* and the Statutes of the Act state. Otherwise he **must** be released!

32. Mr. Shoger proves in his Reply Motion for the Defendants that he has been severely chastised by his superior, the Honorable Kris Kobach, because Mr. Shoger has allowed this case to proceed for 2 years without a dismissal.

a.  This is severely embarrassing for the Kansas Attorney General and his Office because they are supposedly Attorneys that have Law Degrees, have passed the Kansas Bar test, and are fighting justly for their Client, the State of Kansas and the Plaintiff is just a simple minded, mentally ill, sexually violent predator that is ignorant of the law.

b.  You have a right to get legal help from other prisoners unless the prison "provides some reasonable alternative to assist inmates in the preparation of petitions." *Johnson v. Avery*, 393 U.S. 483, 490 (1969). This means that if you have no other way to work on your lawsuit, you can insist on getting help from another prisoner. In *Johnson,* the Supreme Court held that the prison could not stop prisoners from helping each other write legal documents because no other legal resources were available.

c.  If you have other ways to access the court, like a law library or a paralegal program, the state can restrict communications between prisoners under the *Turner* test if "the regulation… is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987) (See Section A for more discussion). The Supreme Court has held that jailhouse lawyers do not receive any additional First Amendment protection, and the *Turner* test applies even for legal communications. Therefore, if prison officials have a "legitimate penological interest," they can regulate communications between jailhouse lawyers and other prisoners. *Shaw v. Murphy,* 532 U.S. 223, 228 (2001). Courts vary in what they consider a "reasonable" regulation. *Johnson* itself states that "limitations on the time and location" of jailhouse lawyers' activities are permissible. The Sixth Circuit Court of Appeals said that it was OK to ban meetings in a prisoner's cell and require a jailhouse lawyer to

only meet with prisoner clients in the library. *Bellamy v. Bradley,* 729 F.2d 417 (6th Cir. 1984). The Eighth Circuit Court of Appeals upheld a ban on communication when, due to a transfer, a jailhouse lawyer was separated from his prisoner-client. *Goff v. Nix,* 113 F.3d 887 (8th Cir. 1997). However, the *Goff* court did require state officials to allow jailhouse lawyers to return a prisoner's legal documents after the transfer. *Id.* at 892. While a state can regulate jailhouse lawyers, it can't ban them altogether if prisoners have no other means of access to the court. In *Bear v. Kautzky,* 305 F.3d 802 (8th Cir. 2002), for example, the court found an access to courts violation when a prison banned prisoners who had no other way to get legal help from speaking to jailhouse lawyers. The right of access to the court is a right that belongs to the person in need of legal services. It does not mean that you have a right to be a jailhouse lawyer or provide legal services. *Gibbs v. Hopkins,* 10 F.3d 373 (6th Cir. 1993); *Tighe v. Wall,* 100 F.3d 41, 43 (5th Cir. 1996). Since jailhouse lawyers are usually not licensed lawyers they *generally* do not have the right to represent prisoners in court or file legal documents with the court, and the conversations between jailhouse lawyers and the prisoner-clients are not usually privileged. *Bonacci v. Kindt,* 868 F.2d 1442 (5th Cir. 1989); *Storseth v. Spellman* 654 F.2d 1349, 1355-56 (9th Cir. 1981). Furthermore, the right to counsel does not give a prisoner the right to choose who he wants as a lawyer. *Gometz v. Henman,* 807 F.2d 113, 116 (7th Cir. 1986). And jailhouse lawyers don't get any special protection from rules that may impact communication with clients. Rather, courts will apply the *Turner* test. Some courts require a jailhouse lawyer to get permission from prison officials before helping another prisoner. For example, a New York state court held that the prison could punish a prisoner for helping another prisoner by writing to the FBI without first getting permission. *Rivera v. Coughlin,* 620 N.Y.S.2d 505, 210 A.D.2d 543 (App. Div. 1994). Nor will being a jailhouse lawyer protect you from transfer, although the transfer may be unconstitutional if it hurts the case of the prisoner you are helping. For more on this, compare *Buise v. Hudkins,* 584 F.2d 223 (7th Cir. 1978) with *Adams v. James,* 784 F.2d 1077, 1086 (11th Cir. 1986). The prison may reasonably limit the number of law books you are allowed to have in

your cell. Finally, jailhouse lawyers have no right to receive payment for their assistance. *Johnson v. Avery*, 393 U.S. 483, 490 (1969).

33. Since the Defendants and Mr. Shoger fail to understand that the Plaintiff is not subject to the Prison Litigation Reform Act because he is not an Inmate or a Prisoner, but rather a Civilly Confined person in a "mental hospital", then the Defendants, Mr. Shoger, the Plaintiff and the Court are in Uncharted Legal Waters and therefore there is NO Due Process in the Act or the Program.

   a. The United States Supreme Court stated in *Hendricks* and reiterated in *Crane* that the KSVPA and SPTP **MUST** have Due Process or they would strike the Law down as Unconstitutional.

   b. This begs the Plaintiff to ask this Honorable Court one question: Would it not be better to have the Plaintiff go to prison for life or to be Civilly Committed to this "Program", but not both?

   c. There is NO Right to a Speedy Trial in the Act or the Program.

      i. The State's Attorney stated: *"Any time limits language in the KSVPA that exist are merely guidelines and not Rights."*

         1. **Due Process is NOT a guideline, but a Right.** This is Cruel and Unusual Punishment.

         2. These Due Process Rights of Pre-Commitment are Systemic to the Act as a whole and most, if not all, respondents, not just the Plaintiff experience something similar.

         3. The Defendants and Mr. Shoger know this, but do not rectify these Constitutional Rights violations for the Plaintiff.

   d. The Plaintiff is not allowed to be present or participate in his Annual Review Hearing, but those that are similarly situated and his criminal counterparts are allowed to be present or participate in **all** of their pre and post trial hearings. This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg*.

34. The Plaintiff has a *6th Amendment* Right to Confront his Accuser and have a Fair and Impartial Trial.

35. The Plaintiff's Criminal History is always discussed at his Annual Interviews and in his Annual Reports. This is another Due Process Rights violation because the Plaintiff's criminal history is *Res Judicata* and is not relevant to the **Annual** Review Hearing/Process as *Hendricks* and *K.S.A. 59-29a08(a)* state.

    a. The Plaintiff is not automatically guaranteed to see the SPTP Progress Review Panel like an inmate would the Kansas Prisoner Review Board in the KDOC.

        i. This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

        ii. This is Cruel and Unusual Punishment.

        iii. The Panel should then be called the SPTP **Advancement** Review Panel.

    b. The SPTP Progress Review Panel does not offer and Appeal Process for the Plaintiff as the Kansas Prisoner Review Board in the KDOC does.

        i. This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

        ii. This is Cruel and Unusual Punishment.

    c. The Panel is viewed by the Plaintiff via TEAMS (an internet system like Zoom or Skype). The Plaintiff does not know who is on the Panel or if they are qualified to make informed Therapeutic "decisions" of his Advancement/Movement/Status within the Program/SPTP.

        i. This is a violation of Due Process and *K.S.A. 60-235.*

        ii. This is Cruel and Unusual Punishment.

    d. The Panel does not have to tell the Plaintiff who voted against him or why regarding his advancement or retraction in the Program/SPTP. This is not the case with the Kansas Prisoner Review Board in the KDOC.

        i. This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

        ii. This is Cruel and Unusual Punishment.

    e. The Panel is made up of as many as 20 to 40 SPTP Staff/Administrators/Facilitators from Larned State Hospital, Osawatomie State Hospital, Parsons State Hospital and KDADS. However, the Kansas Prisoner Review Board in the KDOC is made up of

3-5 members and the vote just has to be a majority. However, the Plaintiff **MUST** have a unanimous vote for him to progress a Tier in the Program/SPTP.

    i.  This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

    ii.  This is Cruel and Unusual Punishment.

f.  The Plaintiff's defense attorney, members of his MS-200 (a form in SPTP/LSH that gives the Defendants the Right to talk and interact with people that are in the community that know the Plaintiff), the Plaintiff's Power of Attorney, nor any witnesses or piece of evidence can be present or participate in the Panel, but the Defendants attorney, by and through KDADS, does. This is not the case with the Kansas Prisoner Review Board in the KDOC.

    i.  This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

    ii.  This is Cruel and Unusual Punishment.

g.  The Panel does not provide transcripts of the Panel Hearing for the Plaintiff unlike the Kansas Prisoner Review Board in the KDOC.

    i.  This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

    ii.  This is Cruel and Unusual Punishment.

h.  The Panel does not give the Plaintiff feedback or constructive criticism on what or how to improve to see the next Panel or to progress to the next Tier. This is not the case with the Kansas Prisoner Review Board in the KDOC.

    i.  This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

    ii.  This is Cruel and Unusual Punishment.

i.  There are no K.A.R.'s (Kansas Administrative Regulations), I.M.P.P.'s (Internal Maintenance Policy and Procedure, Published Orders, General Orders, or Statutes for the Panel like there is for the Kansas Prisoner Review Board in the KDOC.

    i.  This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

    ii.  This is Cruel and Unusual Punishment.

j. The Panel has the Authority and Power to progress the Plaintiff to Tier 2 and 3, but not to Transitional Release, Conditional Release or Final Discharge. **ONLY** the Committing Court of the Plaintiff can do that. However, the Plaintiff's Committing Court is barred from placing the Plaintiff in Tier 2 or Tier 3, **despite Transitional Release being Step 3 of Tier 3.**

    i. This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

    ii. This is Cruel and Unusual Punishment.

k. *SPTP Policy 7.1* is the Policy for Grievances in the Program/SPTP. *SPTP Policy 7.2* is the Policy for Administrative Review for Rights Restrictions and Notifications. Notifications are like Disciplinary Reports in the KDOC.

l. These Policies don't have a Hearing for the Plaintiff like he would have in the KDOC.

    i. This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

    ii. This is Cruel and Unusual Punishment.

m. There are no K.A.R.'s, I.M.P.P.'s, Published Orders, and General Orders for these Policies.

    i. This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

    ii. This is Cruel and Unusual Punishment.

n. There is no Civil Commitment Litigation Reform Act like the Prison Litigation Reform Act.

    i. This is a violation of Due Process, violation of Equal Protection of the Law and a violation of *Hendricks, Foucha, Ohlinger, Blanas, and Youngberg.*

    ii. This is Cruel and Unusual Punishment.

o. The Plaintiff does not receive the Journal Entries from his Committing Court yearly after his Annual Review Hearings.

p. This is a Due Process Rights violation and Cruel and Unusual Punishment.

q. The Plaintiff does not have In Camera Annual Review Hearings yearly if the Plaintiff does not file the Petition for Transitional Release pursuant to *K.S.A. 59-29a08(f)*.

r. This is a Due Process Rights violation and Cruel and Unusual Punishment.

36. The burden of proof is on the State of Kansas before the Plaintiff is Civilly Committed, but after the Plaintiff is Civilly Committed the burden of proof switches to the Plaintiff.

a. This is not a Fair and Impartial Trial.

b. This is a Due Process Rights violation and Cruel and Unusual Punishment.

c. In 2017 the Kansas Legislature reversed *Hendricks* by changing the Statutes of the KSVPA by removing the Right for the Plaintiff to Petition for **Immediate** Release and to Petition at **anytime.**

d. This is not a Fair and Impartial Trial.

e. This is a Due Process Rights violation and Cruel and Unusual Punishment.

f. With the inception of the SPTP Progress Review Panel into the Kansas Sexually Violent Predator Act (*K.S.A. 59-29a02(m)*) the Committing Courts and Annual Reports are Moot and this reverses *Hendricks*. This makes the Act and the Program Unconstitutional and Punitive.

g. The Defendants know this and are legally responsible for these Due Process Violations of the Plaintiff.

37. Therefore the KSVPA and SPTP are Punitive, Ex Post Facto, Double Jeopardy, Cruel and Unusual Punishment, Unequal protection of the Law, violation of Due Process, Shocking to the conscience, Intolerable conduct, Egregious, not a *"civil statutory scheme with a non-punitive effect"*, and violate *Hendricks, Foucha, Ohlinger, Blanas,* and *Youngberg*.

38. Finally, the Defendants and Mr. Shoger believe that when the Kansas Legislature make 69 Amendments to the Act and the Program that violate *Hendricks* that that means the Program and the Act is still Constitutional and not Punitive. However, that is a fallacy that is a genuine issue that this Court **must** decide.

**THEREFORE,** Your Honor, the Plaintiff humbly moves this Honorable Court to rule in his favor in regards to his Plaintiff's Motion in Response to the Defendants Reply in Further Support of their Motion and to deny the Defendants Reply in Further Support of their Motion.

## CERTIFICATE OF SERVICE

I, <u>KENNETH HAY,</u> hereby certify that a True and Correct Copy of this Plaintiff's Motion in Response to the Defendants Reply in Further Support of their Motion for Judgment on the Pleadings was sent, by U.S. Mail, postage prepaid, on this _1 st_ day of the month of _March_ of the year _2025_ to the following parties in this case:


Kansas Attorney General's Office
**C/O Mr. Matthew Shoger**
120 S.W. 10th Street, 2nd Floor
Topeka, Kansas 66612

United States District Courthouse
**C/O Clerk of the District Court**
444 S.E. Quincy
490 U.S. Courthouse
Topeka, Kansas 66683


Respectfully Submitted,
_Kenneth Mark Hay_
Mr. Kenneth Mark Hay
1301 Kansas Highway 264
Larned, Kansas 67550-5353
620-285-4660 extension 4